UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 1 of 18 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [DOC. ## 21, 22, 33]**

## I.
## INTRODUCTION

On July 30, 2013, Plaintiffs Antoine de Sejournet, Adam Henick, and Linda Holder filed the operative first amended complaint ("FAC") against Defendants Goldman Kurkland and Mohidin, LLP ("GKM") and Ahmed Mohidin. [Doc. # 18.]  The FAC asserts the following claims: (1) violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against all Defendants; and (2) violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Defendant Mohidin.

On September 13, 2013, Defendants filed a motion to dismiss and a motion to strike the FAC.  For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED with leave to amend**, Defendants' Motion to Strike is **DENIED** as moot, and Plaintiffs' Motion for Leave to File a Second Amended Complaint is **DENIED** as moot.

## II.
## FACTUAL ALLEGATIONS[1]

Deer Consumer Products, Inc. ("Deer") is a Nevada holding company that operates through subsidiaries in the People's Republic of China.  (FAC ¶ 3.)  Deer became a publicly traded company in 2008 and was listed on the NASDAQ.  (*Id.* ¶¶ 3-4.)  For the years 2009 and 2010, it reported that it doubled its revenues, when in actuality revenues decreased both years.

---
[1] The Court assumes the truth of Plaintiffs' factual allegations solely for purposes of deciding Defendants' motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al. v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 2 of 18 |

(*Id*. ¶¶ 7-8.) Deer also reported growth in 2011, even though it had completely stopped production by the end of 2011. (*Id*. ¶¶ 7-8; 39.)

Deer's alleged fraud first became known to its shareholders when on March 9, 2011, John Carnes issued a report on www.alfredlittle.com exposing a divergence between Deer's subsidiaries' revenue reported to the Securities and Exchange Commission ("SEC") and revenue reported to the Chinese State Administration for Industry and Commerce ("SAIC"), and concluding that Deer had overstated its revenues in its SEC filings. (*Id*. ¶¶ 10, 238.) Additionally, in a Form 8-K filed with the SEC on October 9, 2012, Deer announced that the NASDAQ intended to strike Deer's shares from its listing, citing the following: "[T]he Company's false and misleading disclosures regarding the operational status of its manufacturing facilities in Yangjiang, China; the Company's failure to provide complete responses to NASDAQ Staff's questions regarding the Company's customers, suppliers and shipping providers; and the Company's involvement in a scheme to illicitly transfer corporate funds to a group of stockbrokers through a bogus consulting contract." (*Id*. ¶ 231.)

Defendants, accounting firm Goldman Kurland Mohidin, LLP, ("GKM"), located in Encino, California, and Ahmed Mohidin, a partner at GKM, have been Deer's registered independent auditors since September 3, 2008. (*Id*. ¶¶ 45, 47.) GKM lacks an office in China, and it conducts its audits of Deer's Chinese-based subsidiaries through Beijing-based audit firm Beijing Ever Trust CPAs Co. Ltd. ("BET"). (*Id*. ¶ 46.) In each of GKM's audits of Deer for the years of 2008 through 2011, GKM's audit stated that: (1) GKM performed its audits in accordance with Public Company Accounting Oversight Board ("PCAOB") standards, and (2) Deer's financial statements comported with Generally Accepted Accounting Principles ("GAAP"). (*Id*. ¶ 113-17.)

Plaintiffs contend that GKM's audits did not comply with PCAOB standards because GKM represented that BET was independent of Deer, when it was not. (*Id*. ¶¶ 38, 118.) According to the FAC, Benjamin Wey runs New York Global Group ("NYGG"), and one of NYGG's clients is Deer. (FAC ¶ 59.) BET and NYGG, which assists China-based companies in listing on U.S. stock exchanges, are both located in the same building in Beijing. (*Id*. ¶¶ 22, 28.) The two offices are next door to each other, and share a door and a computer server. (*Id*. ¶¶ 28-30.) According to two BET employees, BET's general manager is a "Mr. Wei," whose surname is the same Chinese character as NYGG's "Wey." (*Id*. ¶ 31.)[2] These employees also state that

---

[2] "[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. Second,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al. v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 3 of 18 |

BET's Mr. Wei manages a financial consulting firm in addition to BET, and one of the employees asserts that Wei's other firm assists China-based companies list on U.S. stock exchanges—just like NYGG. (*Id*. ¶¶ 77, 83.) BET thus allegedly has a relationship with Deer because BET's Wei and NYGG's Wey is the same individual, and Wey is Deer's promoter in the United States through NYGG. (FAC ¶ 107.)[3]

The FAC also asserts that GKM's representation of Deer's financial statements as accurate and in compliance with GAAP is false. Deer allegedly overstated its revenues in 2009 and 2010, and also in 2011, when Deer claims to have earned unprecedented revenues, although it was "no longer producing anything" by the end of 2011. (*Id*. ¶ 39.)

## III.
## DEFENDANTS' MOTION TO DISMISS

**A.**     **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory.

---

those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (internal quotation marks and citations omitted). Here, the confidential statements that the same Wei/Wey that runs BET also runs NYGG is just one piece of the evidence. Plaintiffs' allegations are also based on an article by journalist Roddy Boyd on Benjamin Wey, who runs NYGG, regarding his ties to BET. (FAC ¶ 155.) In addition, Plaintiffs allege that both CW 2 and CW 3 are employees of BET, thus would have personal knowledge of the name of the manager of BET and his other companies. (*Id*. ¶¶ 73, 78.) The statements by the confidential witnesses are themselves indicative of scienter because they suggest BET's lack of independence from Deer, thus GKM's lack of compliance with PCAOB regarding auditor independence. A violation of PCAOB, requiring an auditor to ensure a sub-auditor's independence, can be evidence of scienter when it is accompanied by other evidence. *New Mexico State Investment Council v. Earnest & Young LLP*, 641 F.3d 1089, 1097-98 (2011).

[3] Defendants request that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of various annual reports submitted to PCAOB by Beijing AnShun International CPAs Co., LTD, one of Wey's companies, and by BET. Defendants point to these reports in their Motion to Dismiss for the proposition that both companies are registered with PCAOB. (MTD at 3-4.) Plaintiffs appear to object to the request for judicial notice. (Opp'n to MTD at 3-4.) Because the Court does not find BET or AnShun's registration with PCAOB material to Plaintiffs' claims that GKM misrepresented its own compliance with PCAOB, the Court declines to take judicial notice of these reports at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
|---|---|---|---|

| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 4 of 18 |
|---|---|---|---|

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Rule 8 . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal citation omitted).  In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true.  Legal conclusions, in contrast, are not entitled to the assumption of truth.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief."  *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

Federal Rule 9(b) imposes a heightened pleading standard on a party alleging fraud.  *See* Fed. R. Civ. P. 9(b) (requiring party to "state with particularity the circumstances constituting fraud or mistake").  Rule 9(b) requires that averments of fraud be specific enough to give defendants notice of the particular misconduct in order to allow defendants to defend against the charge and not just deny that they have done anything wrong.  *See Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."); *Reese v. Malone*, 12-35260, -- F.3d --, 2014 WL 555911, *5 (9th Cir. Feb. 13, 2014) (Rule 9(b) applies in securities fraud causes).

**B.**     **Section 10(b) and Rule 10b-5 Violations – Against GKM and Mohidin**

Under Section 10(b) of the Exchange Act, it is unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j.  SEC Rule 10b-5(b) makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," in connection with the purchase or sale of any security.  17 C.F.R. § 240.10b-5(b).  Thus, to prevail on a claim under Section 10(b) and Rule 10b-5(b), a plaintiff must prove:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Reese v. Malone*, No. 12-35260, -- F.3d. --,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 5 of 18 |

2014 WL 55591, *5 (9th Cir. Feb. 13, 2014) (quoting *Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008)).

Under the PSLRA, any private securities complaint alleging that the defendant made a false or misleading statement must:  "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u–4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u–4(b)(2)."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007).

Defendants move to dismiss Plaintiffs' FAC based on a failure to adequately plead the following three elements of their first cause of action:  (1) material misrepresentations or omissions; (2) scienter; and (3) loss causation.

**1. Material Misrepresentation**

To adequately plead a material misrepresentation, a plaintiff must establish that a defendant made a statement that was "*misleading* as to a *material* fact."  *Matrixx Initiatives*, 131 S. Ct. at 1318 (quoting *Basic Inc. v. Levinson,* 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) (emphasis in original).  A misrepresentation is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  *Id.* (quoting *Basic*, 485 U.S. at 231-32)).  "[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) (internal quotion marks omitted).

From 2008 to 2011, GKM's audit reports stated they were conducted in compliance with Public Company Accounting Oversight Board ("PCAOB") standards and that Deer's financial statements comported with "accounting principles generally accepted in the United States of America."  (FAC ¶ 114-17.)  Plaintiffs allege that both statements were material mispresentations.

Plaintiffs point to the PCAOB Interim Auditing Standards ("AU") § 543.04 (*id.* ¶ 134), which provides:

> If the principal auditor [GKM] is able to satisfy himself as to the *independence* and professional reputation of the other auditor [BET] (see paragraph .10) and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 6 of 18 |

> takes steps he considers appropriate to satisfy himself as to the audit performed by the other auditor (see paragraph .12), he may be able to express an opinion on the financial statements taken as a whole without making reference in his report to the audit of the other auditor.  If the principal auditor decides to take this position, he should not state in his report that part of the audit was made by another auditor because to do so may cause a reader to misinterpret the degree of responsibility being assumed.

AU § 543.04 (emphasis added).  Because GKM's audit does not mention that BET was the sub-auditor, Plaintiffs assert that GKM thus represented that it satisfied itself as to the independence of BET, in accordance with AU § 543.04.  The FAC also cites AU § 543.10, which provides that a principal auditor must "make inquiries concerning the professional reputation and independence of the other auditor."  It also requires the principal auditor to obtain a representation from the other auditor that it is independent.  AU § 543.10.

Plaintiffs have adequately pleaded that GKM's statement that it complied with PCAOB standards regarding auditor independence was a material misrepresentation.  Plaintiffs allege sufficient facts to raise an inference that BET was not independent of Deer.  Thus, the FAC sufficiently pleads that GKM, by stating it complied with PCAOB standards, which include those cited above regarding auditor independence, created an "impression of a state of affairs that differs in a material way from the one that actually exists"—*i.e.*, that BET was independent from Deer.  *See In re Cutera Sec. Litig.*, 610 F.3d at 1109 (internal quotation marks ommitted).

Plaintiffs also sufficiently allege that the following statement in GKM's March 28, 2012 audit report was a material misrepresentation:

> [T]he consolidated financial statements referred to above [statements of Deer's income] present fairly, in all material respects, the consolidated financial position of Deer Consumer Products, Inc., as of December 31, 2011 and 2010, and the consolidated results of its operations and its consoldated cash flows for the years ended December 31, 2011, and 2010 and 2009 in conformity with accounting principles generally accepted in the United States of America.

Plaintiffs assert that this statement is a material misstatement because Deer overreported its 2009 and 2010 income, thus GKM's statements that Deer's financial statements fairly present the financial position of Deer in 2010 and accord with GAAP in 2009 and 2010 is false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |

| | | | |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 7 of 18 |

Plaintiffs also point to AU §§ 561.03 and 561.04, which require an auditor to investigate allegations that prior audit reports are inaccurate if information comes to an auditor's attention suggesting the audit should be revised, and to take certain steps set forth in AU § 561.06 if the auditor concludes that information needs to be corrected.  The FAC sufficiently alleges facts plausibly giving rise to an inference that Defendants were aware or should have been aware of the inconsistencies between Deer's SAIC and SEC filings, yet failed to investigate or to revise the audit.  (FAC ¶¶ 12-14, 18, 36, 128.).

Accordingly, the Motion to Dismiss is **DENIED** as to GKM's alleged material misrepresentations.

### 2.     Scienter

To sufficiently plead scienter, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  "A complaint can plead scienter by raising a strong inference that the defendant possessed actual knowledge or acted with deliberate recklessness."  *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).  The court must make a dual inquiry to determine scienter: "first, [the court] will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, [the court] will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of deliberate recklessness."  *Zucco Partners*, 552 F.3d at 992.  The Court must consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007).  To qualify as "strong," an inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.*  A plaintiff must plead facts that "come close[] to demonstrating intent, as opposed to mere motive and opportunity."  *DSAM Global Value Fund*, 288 F.3d 385, 389 (2002) (quotation omitted).

In the context of an audit, "[s]cienter requires more than a misapplication of accounting principles.  The plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that . . . no reasonable accountant would have made the same decisions if confronted with the same facts."  *In re Software Toolworks Inc.*, 50 F.3d 615, 628 (9th Cir. 1994) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-01682 DMG (MRWx) | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al. v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 8 of 18 |

*In re Worlds of Wonder Securities Litigation*, 35 F.3d 1407, 1426 (9th Cir. 1994) (internal quotation marks and alterations omitted). Pleading sufficient facts to support a strong inference of scienter by an outside auditor is difficult "because outsider auditors have more limited information than, for example, the company executives who oversee the audit" and because "an auditor exercises complex and subjective professional judgments that courts are not ideally positioned to second guess." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1097 (9th Cir. 2011). Moreover, "[t]he accountant's success depends on maintaining a reputation for honesty and integrity, requiring a plaintiff to overcome the irrational inference that the accountant would risk its professional reputation to participate in the fraud of a single client." *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000) *aff'd sub nom. DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).

Plaintiffs point to the following as indications that Defendants acted with deliberate recklessness in certifying that it supervised the Deer audits according to PCAOB and Deer's financial reports accorded with GAAP standards: (1) BET's failure to train its auditors; (2) Defendants' failure to investigate Deer's abnormally strong financial performance in the face of a global recession; (3) Defendants' failure to obtain financial filings from Chinese regulatory authorities for Deer's subsidiaries; (4) Defendants' failure to revisit their audit after John Carnes reported that Deer's SEC filings sharply diverged from its SAIC filings; (5) Defendants' report that Deer had earned record revenue after Deer had shuttered its business; (6) the fact that Defendants ignored Wey's rampant misconduct; and (7) allegations that GKM is financially beholden to Wey. (FAC ¶¶ 18, 20, 188, 196, 200-203, 208, 211-12, 219-230, 235.) The Court addresses each allegation in turn, and then considers the FAC holistically to determine whether it raises a strong inference of scienter. *Zucco Partners*, 552 F.3d at 992.

### a. **Plaintiffs Do Not Sufficiently Plead Actual Knowledge**

Plaintiffs allege that GKM and Mohidin had "actual knowledge" of the misrepresentations and omissions in the audit reports and issued "knowingly false audit reports." (FAC ¶¶ 255, 258.) These conclusory allegations appear to be based on Plaintiffs' theory that because GKM signed Deer's audit reports without mentioning BET, "any mistake or fraud committed by BET" in the Deer audit "is attributable to GKM." (*Id.* ¶ 98.) Yet, AU § 543.04, which they cite for this proposition, does not state that the fraud of the "other auditor" can be attributed to the "principal auditor." It simply states that the principal auditor must assure itself of other auditors' independence if its audit report does not identify "the other auditor." AU § 543.04. Plaintiffs do not cite any other legal authority for this proposition, nor can the Court find any. In sum, the FAC does not provide any *specific* allegations that GKM or Mohidin actually knew that BET lacked independence from Deer or of Deer's financial improprieties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 9 of 18 |

        **b.**       **Plaintiffs Sufficiently Plead Deliberate Recklessness**

              **i.**       **BET's Alleged Failure to Train its Auditors**

      Plaintiffs allege that BET failed to train its auditors, suggesting scienter on the part of Defendants. Plaintiffs' allegations regarding training rest solely on statements by confidential witnesses at BET. The Ninth Circuit employs a two-step test to determine whether a complaint relying on statements by confidential witnesses satisfies PSLRA pleading requirements. *Zucco Partners, LLC*, 552 F.3d at 995 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015, 1022 (9th Cir. 2005)). First, "the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Id.* at 995. This requires that the confidential witnesses are described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* at 995 (quoting *In re Daou Sys., Inc.*, 411 F.3d at 1015). The Court looks to "the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." *Id.* (quotation omitted.) Second, the statements must "themselves be indicative of scienter." *Id.*

      Plaintiffs "describe the confidential witnesses with a large degree of specificity" because the FAC "numbers each witness and describes his or her job description and responsibilities." *Zucco Partners, LLC*, 552 F.3d at 996 (internal quotation marks omitted). CW 1, 2, and 4 each reported that BET did not provide any professional training and required auditors to learn on the job. (FAC ¶ 129.) The FAC alleges that CW 1, 2, and 4 were employees of BET, and CW 1 has been a project manager at BET since May 2010, and is currently an employee. (*Id.* ¶ 70.) CW 2 and 4 were auditors and assistant auditors at BET, respectively. (*Id.* ¶¶ 75, 84.) The FAC therefore sufficiently alleges, without divulging their identities, that all of the confidential witnesses reporting that they did not receive training from BET had personal knowledge of that fact.

      Accordingly, the FAC raises an inference of scienter by Defendants based on BET's alleged failure to train its auditors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-01682 DMG (MRWx) | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 10 of 18 |

              ii.        **Defendants' Alleged Failure to Investigate Deer's High Revenues During a Global Recession and Obtain Deer's Chinese Tax Filings**

      Plaintiffs also claim that Defendants' failure to investigate Deer's high revenues and profit margins during a global recession is indicative of scienter.  (FAC ¶¶ 192-200.)  This conclusory allegation is based on the flawed premise that Deer could not have performed well because Deer's competitors did not perform well.  It also assumes that Defendants failed to investigate Deer's financial reports, but the only specific allegation regarding Defendants' failure to investigate is GKM's failure to obtain tax documents for Deer's Chinese subsidiaries

      "[M]ere allegations that an accountant negligently failed to closely review files or follow GAAP cannot raise a strong inference of scienter." *DSAM Global Value Fund*, 288 F.3d at 390; *see also In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir. 1994) (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)) (same).  Rather, an auditor's failure to conduct an investigation into unusually high income reporting must constitute an "extreme departure" from accounting practices.  *DSAM Global Value Fund*, 288 F.3d at 391 (internal quotation marks and citations omitted).

      Plaintiffs fail to point to any authority suggesting that GKM's review of Deer's subsidiaries' Chinese tax filings was required by PCAOB or cite any authority to otherwise suggest that, standing alone, overlooking the contents of these filings rendered GKM's audits "so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful." *In re Software Toolworks Inc.*, 50 F.3d 615, 628 (9th Cir. 1994).  In *DSAM Global Value Fund*, the Ninth Circuit rejected the argument that an accounting firm must have "consciously disregarded" evidence that its client had over reported revenue "because it had access to the documents that revealed [the client's] improper revenue recognition at the very time it conducted the original audit," holding "[t]hat fact does not strongly compel an inference of intentional or deliberately reckless conduct as opposed to ordinary carelessness."  288 F.3d at 390 (citing *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426–27 (9th Cir. 1994)).

      Under this precedent, the Court cannot conclude that GKM's alleged failure to review Deer's Chinese subsidiaries' tax filings during a recession, standing alone, adequately pleads scienter against GKM.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 11 of 18 |

### iii.     Defendants' Alleged Failure to Respond to the Carnes Report

Plaintiffs contend that Defendants' scienter can also be inferred from a March 2011 report by Jon Carnes exposing Deer's financial misconduct. (FAC ¶¶ 10, 18.) Carnes reported that Deer's filings with the SAIC in China in 2009 and 2010 established that Deer kept two sets of books, and that the revenues it reported to the SEC those years were inflated. (*Id.*) According to the FAC, at the time GKM issued its audit of Deer's 2009-2011 financial statements on March 28, 2012, the March 2011 Carnes report and a subsequent lawsuit by Deer's shareholders against Deer had established that Deer's Chinese financial filings contradicted its SEC filings. (*Id.* ¶ 18.) Yet, the March 28, 2012 audit report stated that Deer's financial statements for 2009-2011 were in conformity with GAAP and "fairly represent[ed]" Deer's financial position. (*Id.* ¶ 117.)[2]

An auditor's "egregious refusal to see the obvious," can constitute scienter. *See In re Software Toolworks Inc.*, 50 F.3d at 628. "While a violation of GAAP, standing alone, is not sufficient [to establish scienter], allegations of recklessness have been sufficient where defendants 'failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud.'" *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011) (quoting *Novak v. Kasaks*, 216 F.3d 300, 308–09 (2nd Cir. 2000)). Therefore, Courts have found scienter when facts created an inference that the auditor "should have known" a material fact. *Id.* at 1089. The FAC's allegations regarding GKM's failure to recognize Deer's overinflated income for 2009 and 2010—despite the lawsuit against Deer and the Carnes report a year earlier—give rise to an inference that GKM ignored obvious signs of fraud. Even if GKM did not read the website upon which the Carnes report was published, the FAC alleges that Deer's stocks dropped 22% in March 2011 in response to the report (FAC ¶ 242-43), and a shareholder suit was filed against Deer in April 2011. (*Id.* ¶ 12).

### iv.     Deer's Report That It Earned Record Revenue in 2011

Plaintiffs allege that Deer began closing its factories in the summer of 2011 and "virtually" shuttered its facilities by the end of 2011 (*id.* ¶¶ 211-13), yet reported in its 2011 10-K that it had increased its revenues by about 29%. (*Id.* ¶¶ 212, 214.) They contend that although BET "routinely" conducted site visits to Deer's production facilities, neither BET nor GKM visited in 2011, suggesting scienter by GKM in failing to mention this in its audit report. (*Id.* ¶¶ 112, 218.) According to Plaintiffs, a visit to Deer's production facilities would have shown that

---

[2] GKM's March 9, 2011 report was issued the same day as Carnes' first report. (FAC ¶¶ 116, 238.) Therefore, the only GKM audit report issued after the Carnes report and the shareholder suit was filed is GKM's March 2012 audit report.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 12 of 18 |

production facilities had "virtually" shuttered by end of 2011 and thus the report of increased income in 2011 was false.  (*Id*. ¶ 212, 218.)  The fact that BET is alleged to have "routinely" conducted site visits to Deer's production facilities and then failed to do so in 2011 raises an inference that it was aware that the facilities were closed or closing in 2011.  If BET was the China-based audit firm upon which GKM solely relied for the Deer audit (*id*. ¶ 126), a plausible inference can be drawn that GKM knew or should have known that Deer's production facilities were "virtually" shuttered.  In any event, Deer's 2011 10-K, which GKM certified, indicates that the number of Deer's employees declined from 2,125 the year before to 890.  (*Id*. ¶ 215.)  This should have caused at least reasonable inquiry as to the feasibility of a corresponding 29% increase in revenues in 2011.

The FAC therefore adequately pleads facts giving rise to an inference of scienter based on BET's failure to visit Deer's production facilities in 2011 and GKM's deliberate indifference to warning signs as to the accuracy of the reporting of Deer's record revenue in 2011.

### v. Defendants' Alleged Failure to Address Wey's Misconduct

Plaintiffs claim that GKM and Mohidin ignored Deer and Wey's "rampant misconduct," creating an inference of scienter.  (FAC at 547.)  Plaintiffs point to a business relationship between Deer and First Merger Capital, Inc. ("First Merger"), in which First Merger sold Deer stock without disclosing that Deer had paid First Merger to do so.  (*Id.* ¶¶ 219-230.)  According to Plaintiffs, the Financial Industry Regulatory Authority ("FINRA") publicized its findings regarding Deer's improper relationship with First Merger on March 24, 2011.  (*Id.* ¶ 230.)  Therefore, the information issued only four days prior to GKM's March 28, 2012 report.[3]

A FAC must state "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).  The FAC fails to connect the dots between Deer paying First Merger to sell its stock and a specific material misstatement or omission made with "intentional recklessness" in GKM's March 28, 2012 audit report.  Plaintiffs fail to provide any clarification in their opposition to Defendants' motion to dismiss, which neglects to address this basis for GKM's scienter.  Accordingly, Plaintiffs have failed to adequately plead scienter based on Deer's relationship with First Merger.

---

[3] The March 2011 GKM audit report was issued on March 9—before the FINRA report.  (FAC ¶ 116.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 13 of 18 |

### vi. Defendants' Financial Ties to Wey

Plaintiffs assert that GKM "obtains the majority of its revenues" from auditing China-based companies that are referred to Mohidin by Wey.  (FAC ¶ 21.)  In support of this proposition, the FAC alleges that after Mohidin joined GKM in 2007, it "prospered" because it expanded its number of accountants in 2010 and 2011, (*id.* ¶¶ 123-24) and asserts that Mohidin brought Wey's clients with him from his former firm, Kabani & Co, (*id.* ¶ 122).

Mere financial "motive" is insufficient by itself to demonstrate scienter." *DSAM Global Value Fund*, 288 F.3d at 389; *Reese*, -- F.3d. -- , 2014 WL 555911, *7 (same).  Moreover, the FAC fails to plead facts to support its conclusory allegation that the majority of GKM's business comes from Wey.  It alleges that GKM began to expand only in 2010—*three years* after Mohidin allegedly brought Wey's clients to GKM.

Therefore, the FAC fails to plead scienter on the basis of Defendants' financial ties to Wey.

### c. The FAC's Allegations of Intentional Conduct or Deliberate Recklessness Viewed Holistically

Considered holistically, the allegations in the FAC raise an inference of intentional recklessness by GKM that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314.

Under Ninth Circuit law, "allegations of a seriously botched" audit—where the auditor "failed to see the obvious" and failed to comply with accounting principles—are insufficient to establish scienter where there are no facts that the auditor "knew or must have been aware" of the alleged improprieties.  *Id.* at 287, 390-91.  In examining allegations of scienter, "courts have looked at a range of factors for potential 'red flags,' including the interaction of auditors with company executives and the breadth and scope of the auditor's deviation from GAAP . . . ." *New Mexico State Investment Council*, 641 F.3d at 1097-98.  "[T]he more facts alleged that should cause a reasonable auditor to investigate further before making a representation, the more cogent and compelling a scienter inference becomes."  *Id.* (citations omitted).  As the Ninth Circuit recently stated, "allegations of recklessness have been sufficient where defendants 'failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud.'" *Id.* at 1098 (9th Cir. 2011) (quoting *Novak v. Kasaks*, 216 F.3d 300, 308–09 (2nd Cir. 2000)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al. v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 14 of 18 |

Applying these principles and looking at the FAC as a whole, the Court finds a number of red flags: (1) Mohidin's longstanding interactions with BET and Deer executives (e.g., he brought Wey to GKM from his previous firm); (2) the CWs' allegations of inadequate training; (3) GKM's statement in March 2012 that Deer's 2009 and 2010 financial reports were accurate, despite the Carnes' Report and shareholder lawsuit against Deer nearly a year earlier exposing them as inaccurate; (4) allegations of BET's lack of independence from Deer; (5) BET's routine visits to Deer facilities and then failure to visit the year that a visit would have revealed that Deer had ceased production; and (6) the reporting of Deer's record earnings concomitant with a massive downsizing of Deer's workforce.

The Court does note that GKM's auditing reports examined Deer's financial condition and identified some weaknesses. Specifically, in its audit report for tax years 2009 through 2011, dated March 2012, GKM identified weaknesses in Deer's "internal controls." GKM reported that Deer "did not maintain[] effective internal controls over financial reporting," citing "[i]neffective documentation and testing of Information Technology related controls over financial reporting" and "lack of technical accounting expertise amongst financial staff." (FAC ¶ 117.) These notations in the report are somewhat inconsistent with Plaintiffs' allegations that Defendants were beholden to Deer or acted with "deliberate recklessness" in overlooking Deer's alleged misconduct. *Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F. Supp. 2d 1199, 1207 (C.D. Cal. 2012) (quoting *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, No. 11-2302, 2012 WL 198334, at *10 (C.D. Cal. May 31, 2012) ("It is difficult to envision a scienter allegation sufficient to state a securities fraud claim against an auditor who explicitly issued negative internal control findings in connection with the same company whose financial results it is alleged to have manipulated or purposely ignored in order to fool the investing public.") Yet, after stating these deficiencies, the audit report goes on to state: "Our opinion on the effectiveness of internal control over financial reporting *does not affect our opinion on the consolidated financial statements*," which GKM reported were in conformity with United States accounting principles and "*fairly*" represented "in all material respects" Deer's financial position in 2009 through 2011. (FAC ¶ 117 at 26 (emphasis added).) It therefore provides an unqualified audit of Deer's financial reports for the years in which Deer allegedly falsely reported income.

Accordingly, the Court concludes that the "malicious" inferences in the FAC are "as compelling as any opposing innocent inference." *New Mexico State Inv. Council*, 641 F.3d at 1095. Defendants' motion to dismiss Plaintiffs claims under Section 10(b) and Rule 10b-5 for failure to adequately plead scienter is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 15 of 18 |

### 3.  Loss Causation

"To establish loss causation, 'the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff.'"  *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *In re Daou Sys., Inc.,* 411 F.3d at 1025).  "[A]n inflated purchase price alone is not enough to establish loss causation."  *Id.* at 1056 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 1631, 161 L. Ed. 2d 577 (2005)).  In addition, a complaint must "allege that the defendant's 'share price fell significantly after the truth became known.'"  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (quoting *Dura Pharms.*, 544 U.S. at 342).  The misrepresentation need not be the sole reason for the plaintiffs' loss, but it must be a "substantial cause."  *Id.*  (quotation marks omitted).

Plaintiffs allege a drop in their stocks' share price "after the truth became known," but fail to plead facts showing that it was GKM's misrepresentations in its audit that caused Plaintiffs' financial loss.  Plaintiffs allege that two events not explicitly related to GKM's audit caused Plaintiffs' losses:  (1) John Carnes's March 21, 2011 report revealing the discrepancy between Deer's Chinese and SEC financial filings; and (2) Deer's October 9, 2012 announcement that the NASDAQ discovered Deer's false disclosures regarding the operational status of its manufacturing facilities.  (FAC ¶¶ 11, 231, 242.)  Once the Carnes report was published, Plaintiffs allege that First Merger, a brokerage firm that sells Deer stock, "*allowed* Deer's stock price to fall from $10.68 to $8.37, or almost 22%, damaging investors" in March 2011.  (*Id.* ¶ 242-43 (emphasis added).)  On January 11, 2013, when Deer's stock resumed trading after it was "halted" following Deer's October 9 announcement that the NASDAQ was removing Deer from its listing, Deer's stock price fell from $2.26 to $0.35.  (*Id.* ¶ 244.)

In *Gilead*, investor plaintiffs sufficiently pleaded causation by providing "abundant details of Gilead's [fraud], *and they asserted that this led to a higher demand [for the stock], which in turn inflated Gilead's stock price*."  536 F.3d at 1056 (emphasis added).  Here, in contrast, Plaintiffs fail to allege any facts from which an inference can be drawn that GKM's misrepresentations or omissions caused their loss.  In any amended complaint, Plaintiffs must allege how GKM's misstatements or omissions, for example, caused them to buy the stock, or caused them to buy stock at an inflated price, such that GKM's misrepresentations or omissions were a "substantial" cause of their loss.  *See, e.g., Metzler Inv. GMBH*, 540 F.3d at 1062; *see also Gilead*, 536 F.3d at 1056.

Defendants' motion to dismiss the Section 10(b) and Rule 10b-5 claims is **GRANTED** on the basis that the FAC fails to adequately allege loss causation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 13-01682 DMG (MRWx)** | Date | May 21, 2014 |
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 16 of 18 |

**B.      Violation Section 20(A) Against Mohidin**

Section 20(a) of the Securities and Exchange Act provides in relevant part:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of federal securities laws, and (2) that the defendant exercised actual power or control over the primary violator.  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  "Whether [the defendant] is a controlling person 'is an intensely factual question,' involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  *Kaplan v. Rose,* 49 F.3d 1363, 1382 (9th Cir. 1994 (quoting *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1396–97 (9th Cir. 1993).).  In *Howard*, the Ninth Circuit held that "actual authority over the preparation and presentation to the public of the financial statements is sufficient to make out a prima facie case" for section 20(a) liability.  228 F.3d at 1066.

Plaintiffs allege that Mohidin was the GKM audit partner in charge of the Deer audit. (FAC ¶ 4, 266.)   They also allege that Mohidin "issued" the audit reports and authorized GKM's signature on the audits.  (*Id.* ¶¶ 5, 95.) The FAC also claims that Mohidin trained BET's audit team.  (*Id.* ¶ 128.)  The FAC thus makes specific factual assertions regarding Mohidin's control and "participation in the day-to-day affairs" of GKM and the Deer audit.  It also alleges that Mohidin is a named partner at GKM, which consists of 16 auditors.  (*Id.* ¶¶ 4, 124.)  Facts regarding "participation in the daily affairs of a relatively small company" are sufficient to state a claim under Section 20(a).  *Kaplan*, 49 F.3d at 1382.

Nevertheless, Plaintiffs fail to state a claim for Section 20(a) liability against Mohidin because, as discussed above, Plaintiffs have not sufficiently alleged a primary violation of federal securities law against GKM.  15 U.S.C. § 78t(a).  "Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-01682 DMG (MRWx) | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 17 of 18 |

Defendants' motion to dismiss Plaintiffs' Section 20(a) cause of action against Mohidin is therefore **GRANTED**.

### C.  Plaintiffs Linda Holder and Adam Henick

Defendants move to dismiss Plaintiffs Linda Holder and Adam Henick for failure to file PSLRA certifications with the Court.  Holder and Helnick's certifications were filed on May 8, 2013.  [Doc. # 13-2 at 4-7.]  Accordingly, the Motion to Dismiss Holder and Henick for failure to file PSLRA certifications is **DENIED**.

### IV.
### PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendants oppose Plaintiffs' motion for leave to amend on futility grounds.  Because this Court cannot determine that Plaintiffs' proposed amendments are futile and grants the Motion to Dismiss as to both causes of action, with leave to amend, the Plaintiffs' motion for leave to file a second amended complaint is **DENIED** as moot.

### V.
### MOTION TO STRIKE

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *N.Y. City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (quoting *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)).

Because the Court grants the Motion to Dismiss on both causes of action, with leave to amend, the pending Motion to Strike is **DENIED** as moot.

Case 2:13-cv-01682-DMG-MRW   Document 41   Filed 05/21/14   Page 18 of 18   Page ID #:799

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-01682 DMG (MRWx) | Date | May 21, 2014 |
|---|---|---|---|
| Title | *Antoine de Sejournet, et al.  v. Goldmand Kurkland Mohidin, LLP and Ahmed Mohidin* | Page | 18 of 18 |

## VI.
## CONCLUSION

In light of the foregoing, the Court orders the following:

(1) Defendants' Motion to Dismiss is **GRANTED** with leave to amend;

(2) Plaintiffs' Motion for Leave to File a Second Amended Complaint is **DENIED** as moot;

(3) Defendants' Motion to Strike is **DENIED** as moot;

(4) Plaintiffs shall file their Second Amended Complaint within 21 days of the date of this Order; and

(5) Defendants shall file their response within 21 days after service of the Second Amended Complaint.

**IT IS SO ORDERED.**

CV-90    CIVIL MINUTES—GENERAL    Initials of Deputy Clerk KT