1  John W. Sheller (SBN 67519)
   jsheller@hinshawlaw.com
2  Renee Choy Ohlendorf (SBN 263939)
   rchoy@hinshawlaw.com
3  HINSHAW & CULBERTSON LLP
   11601 Wilshire Blvd.
4  Suite 800
   Los Angeles, CA 90025
5  Telephone:  310-909-8000
   Facsimile:   310-909-8001
6
   Attorneys for Defendants
7  GOLDMAN KURLAND & MOHIDIN, LLP
   and AHMED MOHIDIN
8

9              **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11               **LOS ANGELES DIVISION**

| | |
|---|---|
| 12  ANTOINE DE SEJOURNET, ADAM HELNICK, and LINDA HOLDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 2:13-CV-01682-DMG (MRW) |
| | (Assigned to the Honorable Dolly M. Gee Courtroom " 7") |
| 15        Plaintiff, | **DECLARATION OF RENEE CHOY OHLENDORF IN RESPONSE TO ORDER TO SHOW CAUSE, AND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |
| 16     vs. | |
| 17  GOLDMAN KURLAND AND MOHIDIN, LLP and AHMED MOHIDIN, | |
| 19        Defendants. | |

20

21        **DECLARATION OF RENEE CHOY OHLENDORF**

22        **NOW COMES** Renee Choy Ohlendorf and pursuant to 28 U.S.C. 1746,

23  declares under penalty of perjury that the following is true and correct:

24        1.    I am over the age of 18 and am not party to this action.  I am an attorney

25  at the Los Angeles office of Hinshaw & Culbertson LLP, counsel of record for

26  Defendants Goldman Kurland and Mohidin, LLP and Ahmed Mohidin (collectively,

27  "Defendants").  I have personal knowledge of the matters set forth below, am of

28  sound mind and could and would testify competently thereto if called to do so.

2.     I make this Declaration in response to the Court's February 11, 2015 Order to Show Cause regarding Defendants' compliance with the joint filing process set forth in Local Rule 37, and in support of Defendants' Opposition to Plaintiffs' Motion to Compel and papers in support thereof [Dkt. No. 56].

3.     In their moving papers, <u>Plaintiffs critically omit any mention of Defendants' meet and confer attempts after January 21, 2015, or Defendants' February 4, 2015 offer to produce most of the documents sought by Plaintiffs via this Motion, which should have eliminated many, if not all, of the discovery disputes that Plaintiffs have now inexplicably brought before this Court.</u>  Plaintiffs' counsel of record, <u>Jonathan Horne (admitted pro hac vice) and Laurence Rosen, further fail to inform the Court that they ignored all of those meet and confer attempts in contravention of Local Rule 37-1, choosing instead to file this meritless motion.</u>  As further explained herein, Plaintiffs' attempt to mislead the Court as to Defendants' meet and confer efforts, collaboration on the Joint Stipulation, and what issues are and are not contested by Defendants, are disingenuous and belied by the record.

4.     By way of background, the operative Second Amended Complaint ("SAC") purports to allege that Defendants made fraudulent misstatements with respect to their audit reports issued in 2009, 2010, 2011, and 2012 for Deer Consumer Products, Inc.  ("Deer").  Plaintiffs also contend that Defendants had a profit motive to issue fraudulent audit reports to maintain the business referrals received from Benjamin Wey ("Wey"), an alleged promoter for Deer and other Chinese companies.

5.     In their Motion to Compel, Plaintiffs essentially seek Defendants' <u>entire audit and billing files for clients other than Deer,</u> though the only audits placed at issue by the SAC are those of Deer.  They also demand unfettered access to personnel files for Defendants' staff auditors, though Plaintiffs have likewise not placed the qualifications of Defendants' staff auditors at issue.  Plaintiffs further seek to open the books on Defendants' financial condition, requesting financial statements

2

and detailed information on Defendants' overall revenues and margins, as well as their revenues and margins per all of their clients.

6.      Tellingly, Mr. Horne's declaration is devoid of any description of what happened during the parties' meet and confer process.  That is because the record reflects Defendants made every effort to resolve this discovery dispute short of judicial intervention, efforts which Plaintiffs ignored.  Nor is his statement that he left me messages on February 10, 2015 made under oath.  In fact, he left me no message that day, as set forth in the full accounting of the parties' meet and confer, set forth below.

9.      On December 9, 2014, I received an email from Mr. Horne requesting a meet and confer the following week on Defendants' responses to Plaintiffs' Requests for Production (Set One).  A true and correct copy of said email is attached hereto as **Exhibit A**.

10.      On December 19, 2014, I sent Mr. Horne an email requesting an itemization of disputed items he wanted to discuss, and that I would be available to speak with him after returning from an overseas vacation on January 2, 2015.  A true and correct copy of said email is attached hereto as **Exhibit B**.

11.      On January 7, 2014, I had a telephonic meet and confer with Mr. Horne.  Prior to that call, I did not receive an itemized list of disputed discovery responses, as requested and as required by Local Rule 37-1.  Nevertheless, we discussed Defendants' Responses to Requests Nos. 4(a) and (b), 7, 8, and 9.  I asked Mr. Horne to send authorities in support of his position on those responses, and informed Mr. Horne that I would get back to him the following week.

12.      Later that day, Mr. Horne emailed me the requested authority, and also requested further information on Defendants' objections to production of employee files.  A true and correct copy of those emails are collectively attached hereto as **Exhibit C**.

DECLARATION OF RENEE CHOY OHLENDORF

31579462v1 0945434

13.     Mr. Horne sent me a follow up email on January 19, 2015, a true and correct copy of which is attached hereto as **Exhibit D**.

14.     On January 21, 2014, I emailed a detailed letter response to Mr. Horne with Defendants' position on the discovery issues.  A true and correct copy of said email and letter is collectively attached hereto as **Exhibit E**.

15.     On January 22, 2015, Mr. Horne responded by email with 2.5 pages of cited authorities, demanded that Defendants withdraw their position, and provide a response by the following day.  He did not offer to limit the scope of the requests, or any other compromise.  A true and correct copy of said email is attached hereto as **Exhibit F**.

16.     Because one day was not a sufficient or reasonable amount of time to review all of Mr. Horne's authorities and provide any meaningful response, I informed Mr. Horne I would respond early the next week.  A true and correct copy of said email is attached hereto as **Exhibit G**.

17.     On January 26 and 29, 2015, Mr. Horne sent emails inquiring as to the nature of the redactions made on certain of the documents produced by Defendants, and I informed him on January 30, 2015 that Defendants would provide a log.  A true and correct copy of said emails are collectively attached hereto as **Exhibit H**. As will be explained in further detail below and in Defendants' Opposition, the redactions related to communications and information about services provided by Defendants to clients other than Deer, and are irrelevant and subject to the privacy rights of those clients in their financial information.

**Plaintiffs Prematurely Cut Off Defendants' Meet and Confer Attempts by Sending the Joint Stipulation and Ignored Defendants' Proposed Compromise Sent on February 4, 2015**

18.     On January 27, 2015, I caused a further meet and confer letter to be sent to Mr. Horne via email.  In that letter, I informed Mr. Horne that none of the cases he provided stood for the proposition that a plaintiff may have unfettered

DECLARATION OF RENEE CHOY OHLENDORF

31579462v1 0945434

access to the audit and billing files for <u>non-Deer</u> clients, i.e., all of Defendants' other audit clients, documents concerning the <u>defendant auditor</u>'s financial condition, or the personnel files of the staff auditors where the competence of the staff auditor is not at issue.  Absent such authority, Defendants were unwilling to provide wholesale access to documents which contained confidential and private financial information of parties and non-parties to this suit.  I invited Mr. Horne to limit the scope of his requests, or to seek the information regarding Defendants' purported financial motives in a less invasive way, such as through deposition.  A true and correct copy of said email and letter are collectively attached hereto as **Exhibit I.**

19.    Later that day, Mr. Horne gave the first indication that he would not be amenable to any further meet and confer, as he stated in an email sent to me, "I will get back to you with any disagreement to your responses which will likely, at this point, come <u>in the form of our portion of a joint stipulation</u>." (emphasis added).  A true and correct copy of said email is attached hereto as **Exhibit J.**

20.    On January 30, 2015, Mr. Horne emailed his portion of the Joint Stipulation in support of the pending Motion to Compel, and exhibits thereto.  I did not receive any declarations in support thereof, as required by Local Rule 37-2.2.  A true and correct copy of said email and attachments thereto are collectively attached hereto as **Exhibit K.**

21.    In an effort to resolve the discovery dispute without the need for this Court's intervention, I again met and conferred with Mr. Horne on February 4, 2015.  That day, I caused a meet and confer letter to be sent via email to Mr. Horne.  I am informed by my assistant, Melanie Davis, who emailed that letter on my behalf, that no delivery failure notices were received after sending that correspondence to Mr. Horne.  Thus, upon information and belief, Mr. Horne received my letter.  A true and correct copy of that letter is attached hereto as **Exhibit L.**

22.    In that letter, I offered to produce most of the documents at issue and asked Plaintiffs to reconsider filing the Joint Stipulation and this motion.  For

example, in response to Requests No. 4(a) and (b), which calls for all communications between Defendants and Wey or his firm, New York Global Group ("NYGG"), I agreed to produce all correspondence between Defendants and Wey or NYGG, without limitation. Yet, Plaintiffs assert in their Joint Stipulation that this is a contested issue and request judicial intervention thereon. *See* Jt. Stip., 4:20-28, 5:1-28, 6:1-3, 7:9-28, 8:1-28, 9:1-28, 10:1-28, 11:1-2 [Dkt. No. 54].

In response to Request No. 7, which calls for "Documents sufficient to show the names of all clients of Wey and/or NYGG who were also clients of GKM, and all fees or revenues earned by GKM from these joint clients", I agreed to produce invoices for each of the joint GKM and Wey/NYGG clients. Additionally, I informed Mr. Horne that GKM's audit fees are equally available to him, as they are publicly filed as part of the audited company's SEC reports, and all of the joint Wey/NYGG clients are publicly traded.

In response to Request No. 8, which calls for the full employee files of GKM's staff auditors, I agreed to produce resumes and CVs submitted in connection with the auditors' employment applications, as well as their performance evaluations, subject to entry of a protective order. It appears that Plaintiffs seek the balance of those files, which contain irrelevant and confidential information such as benefits, salary, tax, and immigration status.

In response to Request No. 9, which calls for GKM's financial statements for the years 2009 to 2013, I agreed to provide documents on revenues generated by all of Mr. Mohidin's clients in that time period.

Finally, I informed Mr. Horne that the redacted portions of the already produced documents related to services provided to non-Deer clients, including clients that had no relationship with Wey.

23.    I anticipated that my February 4, 2015 meet and confer attempt would resolve most, if not all, of the pending discovery issues.   As such, I awaited Plaintiffs' response before preparing Defendants' portion of the Joint Stipulation,

which I believed would be tabled or at least revised due to Defendants' concessions. At a minimum, I expected that Defendants' responses to Requests No. 4(a) and (b) would be taken out of contention, as Defendants had agreed to produce all responsive documents without limitation.

24.     I received no response to my February 4, 2015 letter from Mr. Horne or Mr. Rosen, until the instant Motion to Compel was filed.

## Defense Counsel Received No Response from Either Mr. Horne or Mr. Rosen to Their February 4, 2015 Meet and Confer Attempt Until This Motion Was Filed

25.     Incredibly, Plaintiffs assert in their Joint Stipulation that "On February 10, 2015, Lead Plaintiffs left several messages for Defendants informing them they were delinquent on their portion of the Joint Stipulation, and requesting Defendants' submission." *See* Jt. Stip., 1:12-14 [Dkt. No. 54]. <u>Significantly, neither Mr. Horne nor Mr. Rosen appear to be willing to attest to this statement under penalty of perjury, as neither have submitted a declaration to that effect.</u>

26.     That is because no such message was left. I received no message of any kind from either Mr. Horne or Mr. Rosen on February 10, 2015. Nor did I receive any phone calls from either attorney on my direct line, (310) 909-8052, although it is my understanding that Mr. Horne called for me on the office's main line ((310) 909-8000) that day, but left no message.

27.     At approximately 12:57 p.m., I received a phone call from our receptionist, Erin Kinchin, informing me that a Jonathan Horne was on the line. As I was in the midst of leaving my office to eat lunch, I asked her to transfer his call to my voicemail box, intending to return any message he left after lunch. However, I received no voicemail from Ms. Kinchin following that conversation with our receptionist. That is confirmed by Hinshaw & Culbertson's phone and voicemail records for that day. *See* Exh. B to concurrently filed Decl. of J. Davids. Ms. Kinchin has informed me that Mr. Horne did not ask to leave any message with her,

7

31579462v1 0945434

1 │ and that had he done so, she would have conveyed that to me via email. Ms. Kinchin
2 │ has also informed me that when Mr. Horne was unable to reach me, she transferred
3 │ him to the voicemail box of my assistant, Ms. Davis, who was out of the office
4 │ eating lunch. As set forth in Ms. Davis' concurrently filed declaration, he too left no
5 │ message for her. Had Mr. Horne left her a message, she too would have conveyed
6 │ that to me via email.

7 │ 28. In fact, I received no emails of any kind from Mr. Horne or Mr. Rosen
8 │ on February 10, 2015, as reflected by Hinshaw & Culbertson's records for all
9 │ incoming mail to my email box. *See* Exh. B to concurrently filed Decl. of R. Katz.
10 │ Nor did I receive any emails from Ms. Kinchin or Ms. Davis regarding phone
11 │ messages left by Mr. Horne or anyone else that day.

12 │ 29. The following morning, on February 11, 2015, I was served with
13 │ Plaintiffs' Motion to Compel.

14 │ 30. In light of the misrepresentations made by Plaintiffs' counsel, I further
15 │ note for the Court that during the meet and confer process with respect to a stipulated
16 │ protective order in this case, Mr. Horne refused to agree to language conforming to
17 │ California ethics law with respect to the procedure for handling inadvertent
18 │ disclosure of privileged documents. This is the last area of disagreement that
19 │ prevents submission of a stipulated protective order to this Court. Though the
20 │ protective order language is not specifically at issue in this Motion, I believe it to be
21 │ a significant fact to bring to this Court's attention. As such, a true and correct copy
22 │ of the email I sent to and received from Mr. Horne on this issue, as well as a copy of
23 │ the latest redlined, draft version of the parties' stipulated protective order, are
24 │ collectively attached hereto as **Exhibit M**.

25 │ I declare under penalty of perjury that the foregoing is true and correct.
26 │ Executed this 13th day of February, 2015.

27 │
28 │          _/s/ Renee Choy Ohlendorf_
          Renee Choy Ohlendorf

8

31579462v1 0945434

# EXHIBIT "A"



**RE: De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.**

Jonathan Horne to: rchoy@hinshawlaw.com,
jsheller@hinshawlaw.com                                    12/09/2014 08:26 AM

History:            This message has been replied to and forwarded.

Please give me your availability to meet and confer this week on your
responses to our requests for production.

From: rchoy@hinshawlaw.com [rchoy@hinshawlaw.com]
Sent: Friday, November 07, 2014 7:14 PM
To: Jonathan Horne
Subject: Fw: De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.

Renee Choy Ohlendorf, Esq.

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000   |   Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com<mailto:rchoy@hinshawlaw.com>

[cid:_2_1E2865B41E9E89980001542388257D8A]

----- Forwarded by Renee Choy Ohlendorf/HC30 on 11/07/2014 04:14 PM -----

From:        Melanie Davis/HC30
To:          lrosen@rosenlegal.com,
Cc:          Renee Choy Ohlendorf/HC30@HC
Date:        11/07/2014 03:59 PM
Subject:         De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.


Dear Mr. Rosen,

Attached are Defendants' Rule 26(A) Disclosures in connection with this
matter.  Thank you.

Melanie Davis
Assistant to: Daniel Sanchez-Behar, Renee Choy Ohlendorf & Filomena E. Meyer
Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000   |   Fax: 310-909-8001
E-mail: MDavis@hinshawlaw.com<mailto:MDavis@hinshawlaw.com>

[cid:_2_1E9E60E01E9E5CE00001542388257D8A]



Hinshaw & Culbertson LLP is an Illinois registered limited liability
partnership that has elected to be governed by the Illinois Uniform
Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely
for the addressee(s) named in this message. This communication is intended to
be and to remain confidential and may be subject to applicable attorney/client

and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

# EXHIBIT "B"

**RE: De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.**

Renee Choy Ohlendorf  to: Jonathan Horne                              12/19/2014 04:13 PM
Cc: "jsheller@hinshawlaw.com"

Hi Jonathan,
Very sorry for the delay in getting back to you.  We are happy to meet and confer with you.  It may help us to prepare if you give us a list of the issues you'd like to discuss in advance so we can focus on those.  I am out of the office next week on vacation, and will be returning to the office on Jan. 2 and can talk anytime then or the week after.

Additionally, we wanted to let you know that in preparing the disc of the first batch production, it just came to our attention there is an error in Bates numbering on this batch, resulting in an overlap of numbers with the insurance documents we previously produced to you.  To avoid any confusion, we are presently fixing the numbering issue and will have that to you ASAP.  Due to a shortage of staff at this time of year, we are unable to put the renumbered set in the mail to you today, however.

I am sending you an email on the last remaining issues with respect to the protective order in the next few minutes.

Thanks,
Renee

**Renee Choy Ohlendorf, Esq.**

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000 | Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com

# HINSHAW

& CULBERTSON LLP

| Jonathan Horne | Please give me your availability to meet and con... | 12/09/2014 08:26:35 AM |

From:      Jonathan Horne <JHorne@rosenlegal.com>
To:        "rchoy@hinshawlaw.com" <rchoy@hinshawlaw.com>, "jsheller@hinshawlaw.com"
           <jsheller@hinshawlaw.com>,
Date:      12/09/2014 08:26 AM
Subject:   RE: De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.

Please give me your availability to meet and confer this week on your
responses to our requests for production.
_____
From: rchoy@hinshawlaw.com [rchoy@hinshawlaw.com]
Sent: Friday, November 07, 2014 7:14 PM
To: Jonathan Horne
Subject: Fw: De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.

Renee Choy Ohlendorf, Esq.

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com<mailto:rchoy@hinshawlaw.com>

[cid:_2_1E2865B41E9E89980001542388257D8A]

----- Forwarded by Renee Choy Ohlendorf/HC30 on 11/07/2014 04:14 PM -----

From:       Melanie Davis/HC30
To:         lrosen@rosenlegal.com,
Cc:         Renee Choy Ohlendorf/HC30@HC
Date:       11/07/2014 03:59 PM
Subject:    De Sejournet v. Goldman Kurland & Mohidin, LLP, et al.

---

Dear Mr. Rosen,

Attached are Defendants' Rule 26(A) Disclosures in connection with this matter.  Thank you.

Melanie Davis
Assistant to: Daniel Sanchez-Behar, Renee Choy Ohlendorf & Filomena E. Meyer
Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: MDavis@hinshawlaw.com<mailto:MDavis@hinshawlaw.com>

[cid:_2_1E9E60E01E9E5CE00001542388257D8A]


Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

# EXHIBIT "C"



**de Sejournet v. Goldman Kurland Mohidin**
Jonathan Horne  to: rchoy@hinshawlaw.com                    01/07/2015 03:43 PM
Cc:  "jsheller@hinshawlaw.com", "Rosen, Laurence"

As promised, here is authority supporting our point that financial motive to commit fraud is relevant. "The absence of a motive allegation, though relevant, is not dispositive." *Matrixx Initiatives, Inc. v. Siracusano* , 131 S. Ct. 1309, 1324 (2011). Additionally, *DSAM* holds not that *motive* is insufficient to show scienter, but that "*motive and opportunity* " are not *sufficient to plead a case for fraud* :
To allege a strong inference of deliberate recklessness, Appellants "must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity.
*DSAM Global Value Fund v. Altris Software, Inc.* , 288 F.3d 385, 389 (9th Cir. 2002)

"Motive and opportunity" is a term of art:
There is an important reason to apply exacting scrutiny to any claim of motive through company acquisitions. A plaintiff who alleges motive and opportunity necessarily has satisfied the pleading requirements for *scienter,* even without any allegation that a statement that later proved to have been false was made with an indication of knowledge or recklessness.[64] This helps explain why our Circuit refuses to consider allegations of even lavish executive compensation as sufficiently alleging motive despite the fact that one certainly could imagine that a number of executives might commit fraud in order to maintain their positions and therefore their considerable annual pay packages. The point is not whether such pay packages provide, in at least some sense of the word, "motive" to commit fraud, but rather, whether the mere fact that an executive is paid well provides a motive sufficient to permit a case to go to discovery without any further allegations that would support an inference of *scienter.* Our Circuit has concluded, and the PSLRA has reinforced, that relying on such motives "possessed by virtually all corporate insiders"[65] would be improper because it would require "virtually every company in the United States that experiences a downturn in stock price ... to defend securities fraud actions.
*Dobina v. Weatherford Int'l Ltd.* , 909 F. Supp. 2d 228, 243 (S.D.N.Y. 2012)


Here, the Complaint has been sustained, and you have answered. The time to challenge motive and opportunity allegations has passed.



**de Sejournet v. GKM**
Jonathan Horne  to: rchoy@hinshawlaw.com                    01/07/2015 03:53 PM

I looked through your responses to our requests for production. I didn't see the provision of the CCP or California constitution that prohibits requests for production of employee files or mandates that they be provided notice. Please send it to me so that I can have a look. Thanks.

# EXHIBIT "D"



**de Sejournet v. Goldman Kurland Mohidin**
Jonathan Horne  to: rchoy@hinshawlaw.com                    01/19/2015 07:23 AM
Cc: "jsheller@hinshawlaw.com", "Rosen, Laurence"

History:                    This message has been replied to.

I am following up on our meet-and-confer from the first week of January. Have you determined:
(1) Your position on producing documents that implicate GKM's finances; and
(2) Your position on not requiring witnesses to sign Exhibits A so long as the Court has jurisdiction over them.

Thanks.  Happy MLK day.

# EXHIBIT "E"

### Re: de Sejournet v. Goldman Kurland Mohidin

Renee Choy Ohlendorf  to: Jonathan Horne                                01/21/2015 06:12 PM
Cc: "jsheller@hinshawlaw.com", "Rosen, Laurence"

Jonathan,
Please see our response, attached.

Thanks,
Renee

[Untitled].pdf

**Renee Choy Ohlendorf, Esq.**

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com

# HINSHAW
& CULBERTSON LLP

| Jonathan Horne | I am following up on our meet-and-confer from th... | 01/19/2015 07:23:33 AM |

| | |
|---|---|
| From: | Jonathan Horne <JHorne@rosenlegal.com> |
| To: | "rchoy@hinshawlaw.com" <rchoy@hinshawlaw.com>, |
| Cc: | "jsheller@hinshawlaw.com" <jsheller@hinshawlaw.com>, "Rosen, Laurence" <lrosen@rosenlegal.com> |
| Date: | 01/19/2015 07:23 AM |
| Subject: | de Sejournet v. Goldman Kurland Mohidin |

I am following up on our meet-and-confer from the first week of January. Have you determined:
(1) Your position on producing documents that implicate GKM's finances; and
(2) Your position on not requiring witnesses to sign Exhibits A so long as the Court has jurisdiction over them.

Thanks.  Happy MLK day.



**ATTORNEYS AT LAW**

11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025

310-909-8000
310-909-8001 (fax)
www.hinshawlaw.com

January 21, 2015

**VIA EMAIL**

Jonathan Horne, Esq.
The Rosen Law Group, P.A.
275 Madison Ave., 34th Floor
New York, NY 10016

      *Re:*     *De Sejournet, et al. v. Goldman Kurland and Mohidin LLP, et al.,*
           *C.D. Cal. Case No. 13-cv-01682-DMG-MRW*

Dear Mr. Horne:

This letter follows up on our telephonic meet and confer on January 7, 2015, regarding Defendants' Responses to Plaintiffs' Requests for Production Nos. 4(a) and (b), 7, 8, and 9, and the parties' latest draft of the stipulated protective order. Defendants will be standing on their objections to the document requests, as well as their position with respect to any witnesses who refuse to be bound by the stipulated protective order, for the following reasons.

    **1.**      **Request for Production Nos. 4(a) and (b), 7, 9:** Collectively, these requests call for GKM's entire audit and billing files with respect to <u>non-Deer</u> clients, who are not party to this litigation, as well documents on GKM's overall financial status for a 5 year period.

None of the documents requested have any relevance to Plaintiffs' claims that GKM's audit of <u>Deer</u> was improper. Nor do they have any bearing on Defendants' state of mind, or scienter with respect to the Deer audit, i.e. "intent to deceive, manipulate, or defraud." *See Ernst & Ernst v. Hochfelder* (1976) 425 U.S. 185, 193, n. 12 (defining scienter).

Additionally, GKM and its clients have a right of privacy with respect to their confidential financial information. *See Fortunato v. Sup. Ct.* (2003) 114 Cal.App.4[th] 475, 480-81 ("there is a right to privacy in confidential [bank] customer information *whatever* form it takes, whether that form be tax returns, checks, statements, or other account information"). Plaintiffs have not shown any substantial need for these documents that would outweigh the privacy interests of GKM or its other clients.

Plaintiffs appear to suggest these documents are relevant to show that client referrals from Wey provided Defendants with <u>financial motive</u> to overlook revenue misstatements by Deer, and that motive is relevant to proving scienter. Defendants know of no authority which allows discovery on the audit files of non-parties whose audits are not at issue, or the financial

Jonathan Horne, Esq.
January 21, 2015
Page 2

statements of the defendant auditor, nor have Plaintiffs cited to any. Plaintiffs' proffered cases, *Matrixx Initiatives, Inc. v. Siracusano* and *Dobina v. Weatherford Int'l. Ltd.*, 909 F.Supp.2d 228, 243 (S.D.N.Y. 2012), each address whether plaintiff had sufficiently pled scienter in the context of a Rule 12(b)(6) motion to dismiss, and did not consider the specific categories of documents that are discoverable to prove scienter. In fact, the *Dobina* court concluded it would be improper to permit a case to go to discovery based solely on allegations that an executive is well paid and noted that the Second Circuit "refuses" to consider such allegations. The Court in this case similarly concluded that Defendants' alleged financial ties to Wey were insufficient to plead scienter, and specifically held that "[m]ere financial 'motive' is insufficient by itself to demonstrate scienter" when considering whether *See* May 21, 2014 Order, Dkt. No. 41, p. 13.

Nevertheless, Defendants have already agreed to produce documents on its communications with Wey and fees incurred with respect to the Deer audit.

**2.     Request for Production No. 8:** This request calls for "[d]ocuments sufficient to show the identities of all persons who worked on any audit of Deer, and all such person's employee files." As discussed, Defendants will produce all non-privileged documents that reflect the identities of those persons who worked on the Deer audits, such as communications about the audit between audit personnel. Defendants do not have possession, custody, or control of any personnel files for BET employees.

As to employee files for GKM auditors, those are not relevant to any issue in this case and it is unclear why Plaintiffs seek these records. If it is performance evaluations that Plaintiffs seek, there is no allegation that <u>GKM</u> auditors were unqualified or inadequately trained to conduct the Deer audits. Those allegations are solely made against <u>BET's</u> auditors.

Further, employee files are not discoverable absent a demonstration of substantial need for the records that would outweigh the employee's Constitutional privacy interest. *Official Unsecured Creditors Committee of Media Vision Technology, Inc.*, 215 F.R.D. 587, 590 (N.D. Cal. 2003) ("Plaintiffs have failed to demonstrate a substantial need in this litigation for such files which would outweigh the constitutionally protected privacy interests at stake. Plaintiffs' primary contention is that the files are needed to show how E&Y deliberately placed inexperienced and untrained auditors on the Media Vision audit. But Plaintiffs have had ample opportunity to depose the auditors and inquire into these very issues.); *In re Del-Val Financial Corp. Securities Litig.*, 158 F.R.D. 275 (S.D.N.Y. 1994); *New York Stock Exchange, Inc. v. Sloan*, 1976 WL 1690086 (S.D.N.Y. 1976) (denying motion to compel production of auditor employee files on the grounds of relevance and confidentiality). As such, employees whose employment records are sought are entitled to notice and the opportunity to object to such production, which has not been provided here. *See* C.C.P. §1985.6.

**3.     Stipulated Protective Order, Para. 6.3(h):** We cannot agree to Plaintiffs' proposed language in Paragraph 6.3(h), which addresses the potential issue of deposing witnesses who refuse to sign Exhibit A to the protective order. Exhibit A requires a witness to be bound by the terms of the protective order. The language of Paragraph 6.3(h) presently provides that a witness that refuses to sign Exhibit A nevertheless can be shown (but not keep)

Jonathan Horne, Esq.
January 21, 2015
Page 3

confidential documents that are subject to the protective order. In effect, this allows the witness to share any confidential information with third parties, on a blog, or elsewhere, with impunity.

Nor does Plaintiffs' suggestion that the parties apply ex parte to extend the protective order to the witness mitigate the potential harm. As Plaintiffs have pointed out, many of the witnesses are not U.S. residents, and are abroad in China, Canada, or elsewhere. The Central District of California has no personal jurisdiction over these foreign witnesses, which would leave Defendants with no recourse should these witnesses choose to share any confidential information divulged in the course of a deposition or other proceeding. That is a particular concern since some of the witnesses identified are bloggers (e.g. Jon Carnes). Even if these witnesses voluntarily appear for deposition abroad, it does not necessarily subject to them to jurisdiction in California. If you have any case law to the contrary, please provide that for our consideration.

Should you wish to discuss further, please contact me or John Sheller.

Very truly yours,

HINSHAW & CULBERTSON LLP

Renee Choy Ohlendorf
rohlendorf@hinshawlaw.com

RCO:

cc:    John W. Sheller, Esq. (via email)

# EXHIBIT "F"



**RE: de Sejournet v. Goldman Kurland Mohidin**

Jonathan Horne  to: rchoy@hinshawlaw.com                              01/22/2015 03:42 PM

Cc: "jsheller@hinshawlaw.com", "Rosen, Laurence"

History:              This message has been replied to and forwarded.

We disagree; a few notes on each of your points. Please get back to me today or tomorrow, so that we can get our motion to compel on file. Thanks.

(1) Privacy. The "substantial need" test comes from California state cases. In a diversity action, privacy claims are determined under applicable state law. This case is before the Court on federal question. Thus, the relevant provisions are those of federal law. Federal law does not impose a substantial need test. *See generally*  Rutter Group, Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, s. 11:991-11-992, which is reproduced at the foot of this email. The parties conceded that California state law was applicable in *Official Unsecured Creditors Comm. of Media Vision Tech. v. Jain* , 215 F.R.D. 587, 590 (N.D. Cal. 2003). We do not. *Sloan*  and *Del-Val*  relied on a critical self-analysis privilege, which has not been recognized in the Ninth Circuit. *Branch v. Umphenour* , No. 1:08-CV-01655-AWI, 2014 WL 3891813, at *7 (E.D. Cal. Aug. 7, 2014); *Union Pac. R. Co. v. Mower* , 219 F.3d 1069, 1076 (9th Cir. 2000) ("UP's assertion of a self-critical analysis privilege is particularly questionable. This court has not recognized this novel privilege.")

Accordingly, we demand that you withdraw your position and produce personnel files.

(2) Financial interest. I do not understand whether you are offering to produce documents sufficient for us to determine (a) total fees derived from auditing Benjamin Wey's clients, (b) these fees as a percentage of GKM's total income, and (c) general profitability characteristics of these audits - e.g., profit margin, net income, etc., as compared to GKM's other clients.  If so, we are agreed. If not, your position that financial motive is irrelevant to scienter is wrong. In fact, Plaintiffs can still defeat summary judgment by showing motive and opportunity.

"Viewing the evidence in the light most favorable to plaintiff, we conclude that the district court erred in finding that the evidence was not sufficient for a finding of scienter. Plaintiff first contends that "by demonstrating a defendant's motive and opportunity to engage in securities fraud," scienter can be shown.[7] *Cf. Greenwald v. Wells Fargo & Co.*  (*In re Wells Fargo Securities Litigation* ), 12 F.3d 922, 931 (9th Cir.1993) (holding that, at least at the pleading stage, "allegations of motive and opportunity in the complaint are sufficient to establish a basis for inferring ... fraudulent intent"). In interpreting the heightened pleading standards under the Private Securities *1064 Litigation Reform Act of 1995 ("PSLRA"), we determined in *Janas v. McCracken*  (*In re Silicon Graphics Inc. Securities Litigation* ), 183 F.3d 970, 978–79 (9th Cir., *reh'g and reh'g en banc denied,*  195 F.3d 521 (9th Cir.1999), that a mere showing of motive and opportunity would not suffice to survive a motion to dismiss. *In re Silicon Graphics*  erected a more stringent pleading standard than previous Ninth Circuit case law required. *Compare id.*  at 974, 977–79, *with In re Wells Fargo Securities Litigation,*  12 F.3d at 931. Because the PSLRA did not alter the substantive requirements for scienter under § 10(b), however, the standard on summary judgment or JMOL remains unaltered by *In Re Silicon Graphics. See In re Silicon*

*Graphics,* 183 F.3d at 975–76."
*Howard v. Everex Sys., Inc.* , 228 F.3d 1057, 1063-64 (9th Cir. 2000)

Accordingly, we demand that you withdraw your position (if it is your position) that Defendants' motive to commit fraud is irrelevant and produce documents necessary to show (a) total fees derived from auditing Benjamin Wey's clients, (b) these fees as a percentage of GKM's total income, and (c) general profitability characteristics of these audits - e.g., profit margin, net income, etc., as compared to GKM's other clients.

(3) I think we are speaking past each other on the Exhibit A issue. Let me set out our position.

(a) The parties need not require an Exhibit A if a witness's testimony is compelled by service of a subpoena. In such cases, the subpoena gives the Court, or at least the issuing court, jurisdiction over the witness. Here is an example:

*Estate of Ungar v. Palestinian Auth.* , 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005), and cases cited at pages 553-554 of the case.

**(b) We will obtain a signed Exhibit A if a witness voluntarily attends a deposition, or is compelled to attend by foreign law.**

I hope this addresses your concern. Again, please let me know today or tomorrow so we know whether we need to go to the Court.

---

11:991] **Privacy:** Federal courts generally recognize a right of privacy that can be raised in response to discovery requests. [*Johnson by Johnson v. Thompson* (10th Cir. 1992) 971 F2d 1487, 1497; *DeMasi v. Weiss* (3rd Cir. 1982) 669 F2d 114, 119–120]
Unlike a privilege, the right of privacy is *not an absolute bar* to discovery. Rather, courts balance the need for the information against the claimed privacy right. [*Stallworth v. Brollini* (ND CA 2012) 288 FRD 439, 444—federal right of privacy; *West Bay One, Inc. v. Does 1–1,653* (D DC 2010) 270 FRD 13, 15–16 (denying motions to quash subpoenas served on Internet service providers in suit alleging illegal downloading and distribution of copyrighted films)]

Courts will consider various factors in performing the balancing analysis, including "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." [See *Seaton v. Mayberg* (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47]

(1) [11:992] **Diversity actions:** Where state law supplies the rule of decision (e.g., diversity actions), privacy claims are determined under applicable state law (¶ *11:645* ). [FRE 501; *Oakes*

*v. Halvorsen Marine Ltd.* (CD CA 1998) 179 FRD 281, 284 (citing text)]

(a) [11:993] **Examples:** California law recognizes certain protections from discovery based on a constitutional, statutory or common law right of privacy. These relate, for example, to matters of:

——sexual privacy (Calif. CCP § 2017.220);

——health professional disciplinary proceedings (Calif. Ev.C. § 1157); and

——financial information (Calif. Civ.C. § 3295).

In California, the constitutional right to privacy is *not absolute* , but a right subject to invasion where a compelling public interest is involved. [See *Ragge v. MCA/Universal Studios* (CD CA 1995) 165 FRD 601, 604]

*Cross-refer:* See detailed discussion in Weil &

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(III)-B

**From:** rchoy@hinshawlaw.com [mailto:rchoy@hinshawlaw.com]
**Sent:** Wednesday, January 21, 2015 9:12 PM
**To:** Jonathan Horne
**Cc:** jsheller@hinshawlaw.com; Rosen, Laurence
**Subject:** Re: de Sejournet v. Goldman Kurland Mohidin

Jonathan,
Please see our response, attached.

Thanks,
Renee

Renee Choy Ohlendorf, Esq.

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com

## HINSHAW

& CULBERTSON LLP

| From: | Jonathan Horne <JHorne@rosenlegal.com> |
| To: | "rchoy@hinshawlaw.com" <rchoy@hinshawlaw.com>, |
| Cc: | "jsheller@hinshawlaw.com" <jsheller@hinshawlaw.com>, "Rosen, Laurence" <lrosen@rosenlegal.com> |
| Date: | 01/19/2015 07:23 AM |

Subject:      de Sejournet v. Goldman Kurland Mohidin

I am following up on our meet-and-confer from the first week of January. Have you determined:

(1) Your position on producing documents that implicate GKM's finances; and

(2) Your position on not requiring witnesses to sign Exhibits A so long as the Court has jurisdiction over them.

Thanks. Happy MLK day.

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

# EXHIBIT "G"

### RE: de Sejournet v. Goldman Kurland Mohidin

Renee Choy Ohlendorf  to: Jonathan Horne                                     01/23/2015 04:27 PM
Cc: "jsheller@hinshawlaw.com", "Rosen, Laurence"

We will agree to your language on the Exhibit A issue on the protective order.  That should be the last
disputed term.  Please send us a final draft for us to review.

As to the RFP items, we are still reviewing the authorities you've cited and will get back to you on that
early next week.

Thanks, have a nice weekend.

**Renee Choy Ohlendorf, Esq.**

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com

# HINSHAW
& CULBERTSON LLP

---

| Jonathan Horne | We disagree; a few notes on each of your points.... | 01/22/2015 03:42:45 PM |

| | |
|---|---|
| From: | Jonathan Horne <JHorne@rosenlegal.com> |
| To: | "rchoy@hinshawlaw.com" <rchoy@hinshawlaw.com>, |
| Cc: | "jsheller@hinshawlaw.com" <jsheller@hinshawlaw.com>, "Rosen, Laurence" <lrosen@rosenlegal.com> |
| Date: | 01/22/2015 03:42 PM |
| Subject: | RE: de Sejournet v. Goldman Kurland Mohidin |

We disagree; a few notes on each of your points. Please get back to me today or tomorrow, so that we
can get our motion to compel on file. Thanks.

(1) Privacy. The "substantial need" test comes from California state cases. In a diversity action, privacy
claims are determined under applicable state law. This case is before the Court on federal question.
Thus, the relevant provisions are those of federal law. Federal law does not impose a substantial need
test. *See generally*  Rutter Group, Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, s.
11:991-11-992, which is reproduced at the foot of this email. The parties conceded that California state
law was applicable in *Official Unsecured Creditors Comm. of Media Vision Tech. v. Jain* , 215
F.R.D. 587, 590 (N.D. Cal. 2003). We do not. *Sloan*  and *Del-Val*  relied on a critical self-analysis
privilege, which has not been recognized in the Ninth Circuit. *Branch v. Umphenour* , No.
1:08-CV-01655-AWI, 2014 WL 3891813, at *7 (E.D. Cal. Aug. 7, 2014); *Union Pac. R. Co. v.
Mower* , 219 F.3d 1069, 1076 (9th Cir. 2000) ("UP's assertion of a self-critical analysis privilege
is particularly questionable. This court has not recognized this novel privilege.")

Accordingly, we demand that you withdraw your position and produce personnel files.

(2) Financial interest. I do not understand whether you are offering to produce documents sufficient for

us to determine (a) total fees derived from auditing Benjamin Wey's clients, (b) these fees as a
percentage of GKM's total income, and (c) general profitability characteristics of these audits - e.g.,
profit margin, net income, etc., as compared to GKM's other clients.  If so, we are agreed. If not, your
position that financial motive is irrelevant to scienter is wrong. In fact, Plaintiffs can still defeat
summary judgment by showing motive and opportunity.

"Viewing the evidence in the light most favorable to plaintiff, we conclude that the district court
erred in finding that the evidence was not sufficient for a finding of scienter. Plaintiff first
contends that "by demonstrating a defendant's motive and opportunity to engage in securities
fraud," scienter can be shown.[7] *Cf. Greenwald v. Wells Fargo & Co.* (*In re Wells Fargo
Securities Litigation* ), 12 F.3d 922, 931 (9th Cir.1993) (holding that, at least at the pleading
stage, "allegations of motive and opportunity in the complaint are sufficient to establish a basis
for inferring ... fraudulent intent"). In interpreting the heightened pleading standards under the
Private Securities *1064 Litigation Reform Act of 1995 ("PSLRA"), we determined in *Janas v.
McCracken* (*In re Silicon Graphics Inc. Securities Litigation* ), 183 F.3d 970, 978–79 (9th Cir.),
*reh'g and reh'g en banc denied,* 195 F.3d 521 (9th Cir.1999), that a mere showing of motive and
opportunity would not suffice to survive a motion to dismiss. *In re Silicon Graphics* erected a
more stringent pleading standard than previous Ninth Circuit case law required. *Compare id.* at
974, 977–79, *with In re Wells Fargo Securities Litigation,* 12 F.3d at 931. Because the PSLRA
did not alter the substantive requirements for scienter under § 10(b), however, the standard on
summary judgment or JMOL remains unaltered by *In Re Silicon Graphics. See In re Silicon
Graphics,* 183 F.3d at 975–76."
*Howard v. Everex Sys., Inc.* , 228 F.3d 1057, 1063-64 (9th Cir. 2000)

Accordingly, we demand that you withdraw your position (if it is your position) that Defendants'
motive to commit fraud is irrelevant and produce documents necessary to show (a) total fees
derived from auditing Benjamin Wey's clients, (b) these fees as a percentage of GKM's total income, and
(c) general profitability characteristics of these audits - e.g., profit margin, net income, etc., as
compared to GKM's other clients.

(3) I think we are speaking past each other on the Exhibit A issue. Let me set out our position.

(a) The parties need not require an Exhibit A if a witness's testimony is compelled by service of a
subpoena. In such cases, the subpoena gives the Court, or at least the issuing court, jurisdiction over the
witness. Here is an example:

*Estate of Ungar v. Palestinian Auth.* , 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005), and cases cited
at pages 553-554 of the case.

**(b) We will obtain a signed Exhibit A if a witness voluntarily attends a deposition, or is compelled to
attend by foreign law.**

I hope this addresses your concern. Again, please let me know today or tomorrow so we know whether
we need to go to the Court.

11:991] **Privacy:** Federal courts generally recognize a right of privacy that can be raised in response to discovery requests. [*Johnson by Johnson v. Thompson*  (10th Cir. 1992) 971 F2d 1487, 1497; *DeMasi v. Weiss*  (3rd Cir. 1982) 669 F2d 114, 119–120]
Unlike a privilege, the right of privacy is *not an absolute bar*  to discovery. Rather, courts balance the need for the information against the claimed privacy right. [*Stallworth v. Brollini*  (ND CA 2012) 288 FRD 439, 444—federal right of privacy; *West Bay One, Inc. v. Does 1–1,653*  (D DC 2010) 270 FRD 13, 15–16 (denying motions to quash subpoenas served on Internet service providers in suit alleging illegal downloading and distribution of copyrighted films)]

Courts will consider various factors in performing the balancing analysis, including "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." [See *Seaton v. Mayberg*  (9th Cir. 2010) 610 F3d 530, 539, 541, fn. 47]

(1) [11:992] **Diversity actions:** Where state law supplies the rule of decision (e.g., diversity actions), privacy claims are determined under applicable state law (¶ *11:645*  ). [FRE 501; *Oakes v. Halvorsen Marine Ltd.*  (CD CA 1998) 179 FRD 281, 284 (citing text)]
(a) [11:993] **Examples:** California law recognizes certain protections from discovery based on a constitutional, statutory or common law right of privacy. These relate, for example, to matters of:
—sexual privacy (Calif. CCP § 2017.220);

—health professional disciplinary proceedings (Calif. Ev.C. § 1157); and

—financial information (Calif. Civ.C. § 3295).

In California, the constitutional right to privacy is *not absolute* , but a right subject to invasion where a compelling public interest is involved. [See *Ragge v. MCA/Universal Studios*  (CD CA 1995) 165 FRD 601, 604]

*Cross-refer:*  See detailed discussion in Weil &

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(III)-B


**From:** rchoy@hinshawlaw.com [mailto:rchoy@hinshawlaw.com]
**Sent:** Wednesday, January 21, 2015 9:12 PM
**To:** Jonathan Horne
**Cc:** jsheller@hinshawlaw.com; Rosen, Laurence
**Subject:** Re: de Sejournet v. Goldman Kurland Mohidin

Jonathan,
Please see our response, attached.

Thanks,
Renee

**Renee Choy Ohlendorf, Esq.**

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com



| From: | Jonathan Horne <JHorne@rosenlegal.com> |
|-------|------------------------------------------|
| To: | "rchoy@hinshawlaw.com" <rchoy@hinshawlaw.com>, |
| Cc: | "jsheller@hinshawlaw.com" <jsheller@hinshawlaw.com>, "Rosen, Laurence" <lrosen@rosenlegal.com> |
| Date: | 01/19/2015 07:23 AM |
| Subject: | de Sejournet v. Goldman Kurland Mohidin |

I am following up on our meet-and-confer from the first week of January. Have you determined:
(1) Your position on producing documents that implicate GKM's finances; and
(2) Your position on not requiring witnesses to sign Exhibits A so long as the Court has jurisdiction over them.

Thanks.  Happy MLK day.

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected
to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s)
named in this message. This communication is intended to be and to remain confidential and may
be subject to applicable attorney/client and/or work product privileges. If you are not the intended
recipient of this message, or if this message has been addressed to you in error, please
immediately alert the sender by reply e-mail and then delete this message and its attachments. Do
not deliver, distribute or copy this message and/or any attachments and if you are not the
intended recipient, do not disclose the contents or take any action in reliance upon the
information contained in this communication or any attachments.



**de Sejournet v. Goldman Kurland Mohidin**
Jonathan Horne  to: rchoy@hinshawlaw.com                          01/26/2015 07:26 AM
Cc:  "jsheller@hinshawlaw.com"

History:                    This message has been forwarded.

Counsel:

There appear to have been redactions  made in documents produced to us. See the attached document as an example, where names have been redacted. Please let me know:

(1) Whether there have been redactions and, if so
(2) What the basis for the redactions is. Here, for example, you appear to have redacted the names of persons who would have highly relevant knowledge.
(3) Finally, in all future productions, please clearly mark all redactions.

Thank you.

GKM000041.tif

# EXHIBIT "H"

**RE: de Sejournet v. Goldman Kurland Mohidin**

Renee Choy Ohlendorf  to:  Jonathan Horne                                    01/30/2015 04:27 PM
Cc: "jsheller@hinshawlaw.com"

We will provide a log shortly.

**Renee Choy Ohlendorf, Esq.**

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com

# HINSHAW
& CULBERTSON LLP

| Jonathan Horne | I am reiterating my demand that you provide unr... | 01/29/2015 10:35:28 AM |
|---|---|---|

| | |
|---|---|
| From: | Jonathan Horne <JHorne@rosenlegal.com> |
| To: | "rchoy@hinshawlaw.com" <rchoy@hinshawlaw.com>, |
| Cc: | "jsheller@hinshawlaw.com" <jsheller@hinshawlaw.com> |
| Date: | 01/29/2015 10:35 AM |
| Subject: | RE: de Sejournet v. Goldman Kurland Mohidin |

I am reiterating my demand that you provide unredacted documents. Here are some cases holding that it is inappropriate for a producing party to make unilateral relevance redactions. Please respond today. *In re iPhone Application Litig.* , No. 11-MD-02250-LHK, 2013 WL 1095456, at *2 (N.D. Cal. Mar. 7, 2013); *Bartholomew v. Avalon Capital Grp., Inc.* , 278 F.R.D. 441, 452 (D. Minn. 2011) ("[r]edaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request.") *accord  Salser v. Dyncorp Int'l, Inc.* , No. 12-10960, 2014 WL 7139886, at *2 (E.D. Mich. Dec. 12, 2014).

**From:** Jonathan Horne
**Sent:** Monday, January 26, 2015 10:27 AM
**To:** 'rchoy@hinshawlaw.com'
**Cc:** jsheller@hinshawlaw.com
**Subject:** de Sejournet v. Goldman Kurland Mohidin

Counsel:

There appear to have been redactions  made in documents produced to us. See the attached document as an example, where names have been redacted. Please let me know:

(1) Whether there have been redactions and, if so
(2) What the basis for the redactions is. Here, for example, you appear to have redacted the names of

persons who would have highly relevant knowledge.
(3) Finally, in all future productions, please clearly mark all redactions.

Thank you.

# EXHIBIT "I"

**Fw: Message from "RNP0026735D7735"**

Melanie Davis  to:  jhorne                                      01/27/2015 03:59 PM
Cc:  Renee Choy Ohlendorf, John W Sheller

Dear Mr. Horne,

Attached is correspondence in connection with this matter.  Thank you.

**Melanie Davis**
Assistant to: Daniel Sanchez-Behar, Renee Choy Ohlendorf & Filomena E. Meyer
Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: MDavis@hinshawlaw.com



HINSHAW
& CULBERTSON LLP

-

20150127160138678.pdf



# HINSHAW
& CULBERTSON LLP

**ATTORNEYS AT LAW**
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025

310-909-8000
310-909-8001 (fax)
www.hinshawlaw.com

January 27, 2015

**VIA EMAIL**

Jonathan Horne, Esq.
The Rosen Law Group, P.A.
275 Madison Ave., 34th Floor
New York, NY 10016

*Re:   De Sejournet, et al. v. Goldman Kurland and Mohidin LLP, et al.,
C.D. Cal. Case No. 13-cv-01682-DMG-MRW*

Dear Mr. Horne:

This letter responds to your meet and confer email dated January 22, 2015, regarding Defendants' Responses to Plaintiff's Requests for Production Nos. 4(a) and (b), 7, 8, and 9. As Plaintiffs have not provided any authority substantiating their request for producing the request Defendants will be standing on their objections to the document requests.

**1.     Request for Production Nos. 4(a) and (b), 7, 9:**   There appears to be a misunderstanding as to what will and will not be produced, and why. The question is not whether motive is relevant to the element of scienter. It is whether the specific documents Plaintiffs have requested are relevant to the claims and defenses in this case, including the issue of scienter, and are reasonably calculated to lead to the discovery of admissible evidence at trial. They are not. Plaintiffs have stated they seek information on whether a disproportionate number of GKM's clients are referred by Wey or NYGG. However, the requests at issue encompass much more than that, and seek confidential information and documents of non-parties and GKM.

For example, Request No. 7 calls for "Documents sufficient to show the names of all clients of Wey and/or NYGG who were also clients of GKM, and all fees or revenues earned by GKM from these joint clients." Client names appear on more than just invoices, and appear on a number of workpapers and supporting documents. Request Nos. 4(a) and (b) call for all communications with Wey or NYGG regarding GKM's fees for joint clients, as well as GKM's independence. Request No. 9 calls for "GKM's financial statements for each of its fiscal years from 2009 to 2013."

These document requests are overbroad and call for irrelevant documents. As previously discussed, these requests have called for these requests call for **GKM's entire audit and billing files with respect to non-Deer clients, who are not party to this litigation, as well documents on GKM's financials for a 5 year period.** Audit work papers for another company, for

*Building on the Barger Tradition*

Arizona   California   Florida   Illinois   Indiana   Massachusetts   Minnesota   Missouri   New York   Rhode Island   Wisconsin   ✦   London

31576387v1 0945434

Jonathan Horne, Esq.
January 27, 2015
Page 2

example, have no bearing on whether the Deer audit was conducted properly, and if so, intentionally conducted improperly.

**None of Plaintiffs' cited authorities state that a plaintiff may have unfettered access to the audit files of non-defendant companies, or to the auditor's own financials**. The cases cited by Plaintiffs have nothing to do with the appropriate scope of <u>discovery</u>. Rather, all deal with the facts required to <u>plead</u> scienter.

Nor have Plaintiffs at all addressed the privacy rights of these non-party companies or GKM in their audit files, <u>that are protected by both the U.S. and California constitutions</u>. Though Plaintiffs appear to assert that California state law on privacy rights does not apply (an assertion with which we disagree), Plaintiffs do acknowledge that federal courts also recognize privacy objections in their citation to Section 11:991 of the Rutter Guide on same. *See also Fortunato v. Sup. Ct.* (2003) 114 Cal.App.4th 475, 480-81 ("there is a right to privacy in confidential [bank] customer information *whatever* form it takes, whether that form be tax returns, checks, statements, or other account information"). Moreover, the scope of producing entire audit files for multiple companies, and GKM's own financials, would be unduly burdensome and oppressive.

Plaintiffs have offered no authority that states that the audit files of non-parties, or the auditors' own financials, may be discovered. Until Plaintiffs can cite to such authority, the only documents Defendants will be producing in response to these requests are communications with Wey with respect to the audit of Deer, and documents pertaining to the fees Defendants charged for audit services performed for Deer, which Defendants have already agreed to produce.

Defendants note that Plaintiffs have not offered to limit the scope of its requests. There are other, more appropriate and less invasive ways to obtain the information which Plaintiffs seek. Plaintiffs can easily ask Defendants in deposition or through interrogatories the number of clients that were referred by Wey or NYGG, for example.

**2.**     **Request for Production No. 8:**  This request calls for the personnel files of GKM auditors. **Plaintiffs still have not addressed the threshold issue of relevance, and have not stated exactly what information they seek within these files**, which contain confidential and irrelevant information, such as tax, salary, and benefits information. As stated in our last meet and confer, if it is performance evaluations that Plaintiffs seek, <u>there is no allegation that GKM auditors were unqualified or inadequately trained to conduct the Deer audits</u>. Those allegations are solely made against <u>BET's</u> auditors.

Additionally, employee files are subject to a right of privacy under both the U.S. and California constitutions, as discussed in Section 1, above and in our previous meet and confer correspondence. Plaintiffs do not dispute that. The Rutter Guide treatise cited by Plaintiffs reflects that federal courts also recognize this privacy right, and <u>balance the need for the information against the privacy right</u>. Having failed to show the relevance of this request, Plaintiffs have not shown any need for this information that would overcome the privacy rights of these employees.

Jonathan Horne, Esq.
January 27, 2015
Page 3

Courts construing this issue have held that audit employees' privacy rights outweigh any need for discovery in securities actions. *Official Unsecured Creditors Committee of Media Vision Technology, Inc.*, 215 F.R.D. 587, 590 (N.D. Cal. 2003); *In re Del-Val Financial Corp. Securities Litig.*, 158 F.R.D. 275 (S.D.N.Y. 1994); *New York Stock Exchange, Inc. v. Sloan*, 1976 WL 1690086 (S.D.N.Y. 1976).

Again, Plaintiffs have not cited to any cases which hold that employee files are discoverable where auditor competence has not been put at issue. *Branch v. Umphenour*, 2014 WL 3891813 (E.D. Cal. 2014) is a prisoners' rights case in which the court denied the prisoner plaintiff's motion to compel production of documents pertaining to other inmate assaults for lack of relevance. *Union Pacific Railroad Co. v. Mower*, 219 F.3d 1069 (9th Cir. 2000) did not even involve a discovery dispute, and reversed a district court injunction prohibiting a former employee from disclosing confidential information learned while employed by the former employer.

Nor is there any validity to Plaintiffs' attempt to distinguish *Media Vision, Del-Val* or *Sloan*, each of which held employee files non-discoverable. The *Del-Val* and *Sloan* were both decided under the federal court <u>balancing</u> test for privacy rights, and <u>denied motions to compel production of personnel files for lack of relevance</u>. In *Del-Val*, the court stated:

> . . . . **plaintiffs have provided little reason to believe that these personnel records contain information relevant to their federal securities claims**. Plaintiffs have deposed many of the accountants whose employee evaluations they now seek. In addition, defendant has produced the worksheets used by the Deloitte & Touche accountants on the Del-Val/Kenbee audits, as well as other documentary materials. Despite this substantial discovery, **plaintiffs cite purely speculative and unfounded reasons to believe that the employee evaluations contain information that may lead to evidence relevant to their claims**. . . . . (emphasis added).

The *Del-Val* court stated in dicta that even if the plaintiffs could show relevance (which they had not), then the self-critical analysis privilege would also compel against disclosure. *Del-Val*, 158 F.R.D. at 277.

Similarly, the *Sloan* court based its decision in part on employee privacy rights (see *Sloan* at *3), and reasoned the files did not meet the threshold Rule 26 relevance standard in denying a motion to compel, much less the additional relevance requirements for requests that implicated privacy rights:

> . . . . **there is, first, no clear appearance of relevancy. Even if the documents are sufficiently relevant to meet the standard of Rule 26(b), they are so tenuously connected to the audit which is the subject of the action that they do not meet the stricter requirement of relevancy which governs a case where there is a strong policy against disclosure.** The evaluations may show that there were deficiencies in the qualifications of some of the auditors employed. But even if this were so, they would still only speak to an issue once removed from

Jonathan Horne, Esq.
January 27, 2015
Page 4

the gist of this action – the actual performance of the audit. Therefore, even if we assume the documents are otherwise discoverable, they do not appear clearly enough to be relevant to the action to justify disclosure. (emphasis added).

The sole factor in denying motions to compel production of employee files in those cases, as in this case, was lack of relevance to the audit. The self-critical analysis privilege did not come into play, as Plaintiffs erroneously suggest.

Should you wish to discuss further, please contact me or John Sheller.

Very truly yours,

HINSHAW & CULBERTSON LLP

Renee Choy Ohlendorf
rohlendorf@hinshawlaw.com

RCO:
cc:     John W. Sheller, Esq. (via email)

31576387v1 0945434

# EXHIBIT "J"



**RE: De Sejournet, et al. v. GK & M, LLP, et al.**
Jonathan Horne  to:                                                    01/27/2015 07:15 PM
Cc: "jsheller@hinshawlaw.com", "rchoy@hinshawlaw.com"

History:             This message has been forwarded.

Let me try to head off a motion to compel on at least one ground. Request No.
7 calls for "documents sufficient to show", not "all documents". "Documents
sufficient to show" means enough documents to compile a list. Your objection
is that it is unduly burdensome produce "all documents". I assume, therefore,
that you have no objection to producing "documents sufficient to show" the
requested item. So it doesn't look like there's actually a dispute on Request
No. 7, although tell me if you refuse to produce "documents sufficient to
show."

I will get back to you with any disagreement to your responses which will
likely, at this point, come in the form of our portion of a joint stipulation.

From: MDavis@hinshawlaw.com [MDavis@hinshawlaw.com]
Sent: Tuesday, January 27, 2015 7:02 PM
To: Jonathan Horne
Cc: jsheller@hinshawlaw.com; rchoy@hinshawlaw.com
Subject: De Sejournet, et al. v. GK & M, LLP, et al.

Dear Mr. Horne,

I inadvertently sent you the below email without referencing the matter.

Melanie Davis
Assistant to: Daniel Sanchez-Behar, Renee Choy Ohlendorf & Filomena E. Meyer
Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: MDavis@hinshawlaw.com<mailto:MDavis@hinshawlaw.com>

[cid:_2_1E99EB641E99E8F800005E9F88257DDB]

----- Forwarded by Melanie Davis/HC30 on 01/27/2015 04:02 PM -----

From:        Melanie Davis/HC30
To:          jhorne@rosenlegal.com,
Cc:          Renee Choy Ohlendorf/HC30@HC, John W Sheller/HC30@HC
Date:        01/27/2015 03:59 PM
Subject:        Fw: Message from "RNP0026735D7735"


Dear Mr. Horne,

Attached is correspondence in connection with this matter.  Thank you.

Melanie Davis
Assistant to: Daniel Sanchez-Behar, Renee Choy Ohlendorf & Filomena E. Meyer
Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: MDavis@hinshawlaw.com<mailto:MDavis@hinshawlaw.com>

[cid:_2_1E99C4281E99C02800005E9F88257DDB]

-

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

# EXHIBIT "K"



**de Sejournet v. Goldman Kurland Mohidin LLP**

Jonathan Horne   to:   rchoy@hinshawlaw.com, jsheller@hinshawlaw.com          01/30/2015 03:44 PM

Cc:   "Rosen, Laurence"

History:          This message has been forwarded.

Counsel –

I have attached our portion of the joint stip. Please fill in your portion, and return to us for filing.

Have a good weekend.

Jonathan Horne
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, NY, 10016
212-686-2603 (direct)
917-509-6721 (cell)
212-686-1060 (main)
jhorne@rosenlegal.com

Exhibit - letter from R Choy dated January 21, 2015.pdf          2015-01-30 joint stip service.doc

Exhibit - GKM 56.pdf     Exhibit - GKM 102.pdf     Exhibit - GKM 287.pdf



**HINSHAW**
& CULBERTSON LLP

**ATTORNEYS AT LAW**

11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025


310-909-8000
310-909-8001 (fax)
www.hinshawlaw.com

January 21, 2015

**VIA EMAIL**

Jonathan Horne, Esq.
The Rosen Law Group, P.A.
275 Madison Ave., 34th Floor
New York, NY 10016

      Re:    *De Sejournet, et al. v. Goldman Kurland and Mohidin LLP, et al.,*
           *C.D. Cal. Case No. 13-cv-01682-DMG-MRW*

Dear Mr. Horne:

This letter follows up on our telephonic meet and confer on January 7, 2015, regarding Defendants' Responses to Plaintiff's Requests for Production Nos. 4(a) and (b), 7, 8, and 9, and the parties' latest draft of the stipulated protective order. Defendants will be standing on their objections to the document requests, as well as their position with respect to any witnesses who refuse to be bound by the stipulated protective order, for the following reasons.

    **1.**    **Request for Production Nos. 4(a) and (b), 7, 9:** Collectively, these requests call for GKM's entire audit and billing files with respect to <u>non-Deer</u> clients, who are not party to this litigation, as well documents on GKM's overall financial status for a 5 year period.

None of the documents requested have any relevance to Plaintiffs' claims that GKM's audit of <u>Deer</u> was improper. Nor do they have any bearing on Defendants' state of mind, or scienter with respect to the Deer audit, i.e. "intent to deceive, manipulate, or defraud." *See Ernst & Ernst v. Hochfelder* (1976) 425 U.S. 185, 193, n. 12 (defining scienter).

Additionally, GKM and its clients have a right of privacy with respect to their confidential financial information. *See Fortunato v. Sup. Ct.* (2003) 114 Cal.App.4[th] 475, 480-81 ("there is a right to privacy in confidential [bank] customer information *whatever* form it takes, whether that form be tax returns, checks, statements, or other account information"). Plaintiffs have not shown any substantial need for these documents that would outweigh the privacy interests of GKM or its other clients.

Plaintiffs appear to suggest these documents are relevant to show that client referrals from Wey provided Defendants with <u>financial motive</u> to overlook revenue misstatements by Deer, and that motive is relevant to proving scienter. Defendants know of no authority which allows discovery on the audit files of non-parties whose audits are not at issue, or the financial

Jonathan Horne, Esq.
January 21, 2015
Page 2

statements of the defendant auditor, nor have Plaintiffs cited to any. Plaintiffs' proffered cases,
*Matrixx Initiatives, Inc. v. Siracusano* and *Dobina v. Weatherford Int'l. Ltd.*, 909 F.Supp.2d 228,
243 (S.D.N.Y. 2012), each address whether plaintiff had sufficiently pled scienter in the context
of a Rule 12(b)(6) motion to dismiss, and did not consider the specific categories of documents
that are discoverable to prove scienter. In fact, the *Dobina* court concluded it would be improper
to permit a case to go to discovery based solely on allegations that an executive is well paid and
noted that the Second Circuit "refuses" to consider such allegations. The Court in this case
similarly concluded that Defendants' alleged financial ties to Wey were insufficient to plead
scienter, and specifically held that "[m]ere financial 'motive' is insufficient by itself to
demonstrate scienter" when considering whether *See* May 21, 2014 Order, Dkt. No. 41, p. 13.

Nevertheless, Defendants have already agreed to produce documents on its
communications with Wey and fees incurred with respect to the Deer audit.

**2.      Request for Production No. 8:** This request calls for "[d]ocuments sufficient to
show the identities of all persons who worked on any audit of Deer, and all such person's
employee files." As discussed, Defendants will produce all non-privileged documents that
reflect the identities of those persons who worked on the Deer audits, such as communications
about the audit between audit personnel. Defendants do not have possession, custody, or control
of any personnel files for BET employees.

As to employee files for GKM auditors, those are not relevant to any issue in this case
and it is unclear why Plaintiffs seek these records. If it is performance evaluations that Plaintiffs
seek, there is no allegation that <u>GKM</u> auditors were unqualified or inadequately trained to
conduct the Deer audits. Those allegations are solely made against <u>BET's</u> auditors.

Further, employee files are not discoverable absent a demonstration of substantial need
for the records that would outweigh the employee's Constitutional privacy interest. *Official
Unsecured Creditors Committee of Media Vision Technology, Inc.*, 215 F.R.D. 587, 590 (N.D.
Cal. 2003) ("Plaintiffs have failed to demonstrate a substantial need in this litigation for such
files which would outweigh the constitutionally protected privacy interests at stake. Plaintiffs'
primary contention is that the files are needed to show how E&Y deliberately placed
inexperienced and untrained auditors on the Media Vision audit. But Plaintiffs have had ample
opportunity to depose the auditors and inquire into these very issues.); *In re Del-Val Financial
Corp. Securities Litig.*, 158 F.R.D. 275 (S.D.N.Y. 1994); *New York Stock Exchange, Inc. v.
Sloan*, 1976 WL 1690086 (S.D.N.Y. 1976) (denying motion to compel production of auditor
employee files on the grounds of relevance and confidentiality). As such, employees whose
employment records are sought are entitled to notice and the opportunity to object to such
production, which has not been provided here. *See* C.C.P. §1985.6.

**3.      Stipulated Protective Order, Para. 6.3(h):** We cannot agree to Plaintiffs'
proposed language in Paragraph 6.3(h), which addresses the potential issue of deposing
witnesses who refuse to sign Exhibit A to the protective order. Exhibit A requires a witness to
be bound by the terms of the protective order. The language of Paragraph 6.3(h) presently
provides that a witness that refuses to sign Exhibit A nevertheless can be shown (but not keep)

Jonathan Horne, Esq.
January 21, 2015
Page 3

confidential documents that are subject to the protective order.  In effect, this allows the witness
to share any confidential information with third parties, on a blog, or elsewhere, with impunity.

Nor does Plaintiffs' suggestion that the parties apply ex parte to extend the protective
order to the witness mitigate the potential harm.  As Plaintiffs have pointed out, many of the
witnesses are not U.S. residents, and are abroad in China, Canada, or elsewhere.  The Central
District of California has no personal jurisdiction over these foreign witnesses, which would
leave Defendants with no recourse should these witnesses choose to share any confidential
information divulged in the course of a deposition or other proceeding.  That is a particular
concern since some of the witnesses identified are bloggers (e.g. Jon Carnes).  Even if these
witnesses voluntarily appear for deposition abroad, it does not necessarily subject to them to
jurisdiction in California.  If you have any case law to the contrary, please provide that for our
consideration.

Should you wish to discuss further, please contact me or John Sheller.

Very truly yours,

HINSHAW & CULBERTSON LLP

Renee Choy Ohlendorf
rohlendorf@hinshawlaw.com

RCO:

cc:    John W. Sheller, Esq. (via email)

31575724v1 0945434

1  Laurence M. Rosen (SBN 219683)      John Sheller (SBN ___
2  THE ROSEN LAW FIRM, P.A.             HINSHAW & CULBERTSON LLP
3  355 South Grand Avenue, Suite 2540   11601 Wilshire Blvd., Suite 800
   Los Angeles, CA 90071                Los Angeles, CA 90025
4  Telephone:  (213) 785-2610           Telephone: (310) 909-8080
   Facsimile:  (213) 226-4684           Facsimile: (310) 909-8001
5  Email:  lrosen@rosenlegal.com        Email: jsheller@hinshawlaw.com

6
   Attorneys for Lead Plaintiffs        Attorneys for Defendants Goldman
7                                        Kurland & Mohidin LLP and Ahmed
                                         Mohidin

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  ANTOINE DE SEJOURNET, ADAM
    HELNICK, and LINDA HOLDER,
13  INDIVIDUALLY AND ON BEHALF           CASE No.: 13-cv-1682-DMG
    OF ALL OTHERS SIMILARLY              (MRWx)
14  SITUATED,
15
                        Plaintiff,       **JOINT STIPULATION (LR 37-1)
16                                        RE: (1) LEAD PLAINTIFFS'
             vs.                          FIRST SET OF REQUESTS FOR
17                                        PRODUCTION; AND (2)
                                          REDACTIONS MADE IN
18  GOLDMAN KURLAND AND                   DEFENDANTS' PRODUCTION**
    MOHIDIN, LLP, and AHMED
19  MOHIDIN,                             **Date:
                                         Time:      11:00  a.m.
20                      Defendants.       Judge:    Hon.  Michael R. Wilner
                                          Ctrm:     H – 9th Floor
21                                        Discovery cutoff:  October 20, 2015
                                          Pretrial conference: May 24, 2016
22                                        Trial date: June 21, 2016**

23

24

25

26

27

28

**JOINT STIPULATION**

Pursuant to Local Rule 37-2.1, Lead Plaintiffs Antoine de Sejournet, Adam Helnick, and Linda Holder ("Lead Plaintiffs") and Defendants Goldman Kurland Mohidin, LLP ("GKM") and Ahmed Mohidin ("Defendants") submit this joint stipulation regarding Lead Plaintiffs' motion to (1) overrule Defendants' objections to Lead Plaintiffs' First Requests for the Production of Documents (the "Requests"); and (2) provide unredacted documents responsive to the Requests.

The parties conferred in an effort to eliminate their disputes, in satisfaction of their obligations under Local Rule 37-1.

## I.   INTRODUCTION.

### A.   Lead Plaintiffs' Preliminary Statement.

Though a Delaware company whose stock was listed on the NASDAQ, the operations of Deer Consumer Products, Inc., ("Deer") took place entirely in China. After analysts issued reports showing that Deer had committed substantial fraud, Deer's stock was stricken by the NASDAQ, and it disappeared entirely. Deer investor, including Lead Plaintiffs here, incurred substantial losses when Deer's fraud was revealed.

GKM was Deer's auditor, and Mohidin was its partner in charge of the Deer audit. Lead Plaintiffs sue Defendants for securities fraud for the Deer audits; Judge Gee held that Lead Plaintiffs' complaint sufficiently alleged that Defendants had falsely and with scienter stated that Deer's financial statements had been presented in accordance with applicable accounting standards and that their own audit had complied with applicable auditing standards.[1]

Fraudster Benjamin Wey and his New York Global Group (the "NYGG") brought more than a dozen fraudulent China-based companies to U.S. capital markets. Though all of their operations took place in China, these companies were

---

[1] Dkt. # 41, at 13-14.

1<br>Joint Stipulation Re: Motion to Comepl

1  nominally U.S. companies, and though they reported to the SEC, substantially all of

2  their purported operations took place in China. These companies uniformly raised

3  tens or even hundreds of millions of dollars from U.S. capital markets. Then, all but

4  a few of the companies' executives disappeared, revealing that the companies had

5  never existed on anywhere near the scale they claimed in their SEC filings. Deer

6  was one such company.

7      The companies have something beyond Wey and the NYGG in common:

8  their auditors are GKM and Mohidin. In at least one other instance that proceeded

9  to discovery, Defendants did a suspiciously poor job. The management of Benjamin

10  Wey client AgFeed Industries, Inc. ("AgFeed") exchanged emails wondering why

11  GKM and Mohidin did not detect their obvious fraud; Defendants were shown

12  AgFeed's tax documents demonstrating that it was committing vast fraud, but even

13  after being shown this incontrovertible evidence, Defendants still signed off on

14  their AgFeed audit.

15      If Defendants performed a competent audit, they knew that Wey would direct

16  his business elsewhere. Their relationship with Wey had earned them millions of

17  dollars in the aggregate. Thus, Defendants performed recklessly poor audits

18  because that's what they were hired to do.

19      Motive is, obviously, relevant to fraud. Indeed, the Ninth Circuit has held

20  that a party can survive a motion for summary judgment simply by showing that a

21  defendant had a motive to commit fraud and an opportunity to do so. *Howard v.*

22  *Everex Sys., Inc.*, 228 F.3d 1057, 1063-64 (9th Cir. 2000). Here, Defendants'

23  motive was to give all of Wey's clients a pass so that Wey would not take all of his

24  business away.

25      Defendants have taken for themselves the right to not produce either (a)

26  communications with Wey or the NYGG about services provided and payments

27  concerning non-Deer clients, and (b) documents sufficient to show total revenues

28  from Wey's clients. Through this reservation, Defendants prevent Lead Plaintiffs

1    from obtaining a host of evidence that would show that Defendants committed

2    fraud in their Deer audit. Thus, for example, if Wey sent Mohidin an email offering

3    to bribe him to provide a fraudulent audit opinion for another of his clients,

4    Defendants would not produce it. If documents showed that Defendants had a

5    profitable sideline providing "consulting" services to Wey's other clients as a

6    reward for issuing clean audits, Defendants would not produce them, either. And if

7    documents showed that literally all of GKM's revenues came from Wey's clients,

8    Defendants would not produce them to Lead Plaintiffs.

9        Defendants have complained of burden, overbreadth, and relevance. Their

10   relevance objections are without merit; indeed, they appear to conclude as much.[2]

11   As to overbreadth and burden, Lead Plaintiffs seek only a discrete subset of

12   documents: communications with Wey or his company discussing finances or the

13   auditor's independence, or "*documents sufficient to show*" the revenues earned

14   from Wey's clients. This is hardly overbroad or unduly burdensome.

15       Citing the California Constitution, Defendants have also refused to produce

16   employee records – personnel records, and the like. Since this action is before the

17   Court on federal question jurisdiction, not diversity, the California constitution's

18   protections run afoul of the Supremacy Clause. And Defendants also cite a few

19   cases from the Southern District of New York that apply a dubious new principle

20   that later cases codified as the self-reflective analysis privilege. The Ninth Circuit,

21   however, does not recognize this "dubious" privilege.

22       Finally, the documents Defendants have produced exhibit what appear to

23   have been redactions, though Defendants did not identify them as such. Further, the

24   redactions appear to be of highly material information – for example, the identity of

---

25   [2] Letter from Renee Choy Ohlendorf to Jonathan Horne dated January 21, 2015

26   "The question is not whether motive is relevant to the element of scienter. []

27   Plaintiffs have stated they seek information on whether a disproportionate number of GKM's clients are referred by Wey or NYGG. However, the requests at issue

28   encompass much more than that."

persons making payments to Defendants. Defendants have ignored Lead Plaintiffs' multiple requests that they meet and confer to justify their redactions. Court frown upon a producing party's attempt to redact information it deems irrelevant, particularly where the parties have agreed to a protective order. Defendants should be ordered to reproduce unredacted documents to Lead Plaintiffs, and to refrain from making any redactions in any of their further productions on grounds of relevance.

**B.      Defendants' Preliminary Statement:**

## II.      LEAD PLAINTIFFS' REQUESTS FOR JUDICIAL INTERVENTION

**A.      Requests 4 a., b., 7, and 9.**

      **1.      Discovery at issue**

Lead Plaintiffs' Request 4.

All Communications with Wey or NYGG Concerning any of:

      a.      GKM's independence;

      b.      GKM'S fees from audit services it provides to clients of Wey or of the NYGG;

[]

Defendants' response to Request 4 a. and b.

      (a)      Objection, this request is overly broad and unlimited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence at trial, and is not relevant to the claims or defenses of any party of this action vague, ambiguous, violates the Constitutionally protected rights of privacy guaranteed to this Responding Party and non-party individuals by the U.S. and California Constitutions, and is unduly burdensome, harassing, and oppressive, as it calls for financial and other documents pertaining to entities

-4-

and/or individuals other than Deer. Responding Party further objects to the term "independence" as vague and ambiguous. Subject to and without waiver of said objections, Responding Party will produce all responsive and non-privileged documents in its possession, custody, or control pertaining to GKM's independence with respect to the audits performed by Responding Party on behalf of Deer during the Class Period.

(b)    Objection, is overly broad in time and scope, not reasonably calculated to lead to the discovery of admissible evidence at trial, and is not relevant to the claims or defenses of any party to this action, as it calls for financial and other documents pertaining to entities and/or individuals other than Deer, and financial motive alone is insufficient to establish scienter. *DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 389 (9th Cir. 2002). Responding Party further objects that this request calls for confidential and/or proprietary information, violates the Constitutionally protected rights of privacy guaranteed to this Responding Party and non-party individuals by the U.S. and California Constitutions, is vague, ambiguous, compound, unduly burdensome, harassing, and oppressive. Responding Party further objects to the extent this request calls for documents subject to attorney/client privilege and/or work product doctrine. Subject to and without waiver of said objections, Responding Party will produce all responsive and non-privileged documents in its possession, custody, or control pertaining to GKM's fees incurred with respect to the audits performed by Responding Party on behalf of Deer during the Class Period.

Lead Plaintiffs' Request 7.

Documents sufficient to show the names of all clients of Wey and/or NYGG who were also clients of GKM, and all fees or revenues earned by GKM from these joint clients.

1  Defendants' Response to Request 7

2      Objection, this request is overly broad in time and scope, not

3  reasonably calculated to lead to the discovery of admissible evidence at trial,

4  and is not relevant to the claims or defense of any party to this action, as it

5  calls for financial and other documents pertaining to entities and/or

6  individuals other than Deer, and financial motive alone is insufficient to

7  establish scienter. *DSAM Global Value Fund v. Altris Software, Inc.,* 288

8  F.3d 385, 389 (9th Cir. 2002). Responding Party further objects that this

9  request calls for confidential and/or proprietary information, violates the

10  Constitutionally protected rights of privacy guaranteed to this Responding

11  Party and non-party individuals by the U.S. and California Constitutions, is

12  vague, ambiguous, compound, unduly burdensome, harassing, and

13  oppressive. Responding Party further objects to the extent this request calls

14  for documents subject to attorney/client privilege and/or work product

15  doctrine.

16  Request No. 9

17  GKM's financial statements for each of its fiscal years from 2009 to 2013.

18  Defendants' Response to Request No. 9

19      Objection, this request is not reasonably calculated to lead to the

20  discovery of admissible evidence at trial, and is not relevant to the claims or

21  defense of any party to this action, as financial motive alone is insufficient to

22  establish scienter. *DSAM Global Value Fund v. Altris Software, Inc.,* 288

23  F.3d 385, 389 (9th Cir. 2002). Responding Party further objects that this

24  request calls for confidential and/or proprietary information and violates the

25  Constitutionally protected rights of privacy guaranteed to this Responding

26  Party and non-party individuals by the U.S. and California Constitutions.

27  Responding Party further objects to the extent this request calls for

28  documents subject to attorney/client privilege and/or work product doctrine.

1

2        **2.      Lead Plaintiffs' Position:**

3        Lead Plaintiffs offered to resolve the dispute by accepting documents

4   sufficient to show GKM's revenues from Wey and Wey's clients, as well as

5   financial measures of profitability for engagements with Wey and Wey's clients,

6   such as net income and margins. Defendants refuse to produce any documents other

7   than those that relate to GKM's audits of Deer.

8        "Parties may obtain discovery regarding any matter, not privileged, that is

9   relevant to the claim or defense of any party." Fed. R. Civ. Proc. 26(b)(1). "The

10  question of relevancy should be construed liberally and with common sense and

11  discovery should be allowed unless the information sought has no conceivable

12  bearing on the case." *Anderson v. Hansen*, No. 1:09-CV-01924-LJO, 2012 WL

13  4049979, at *1 (E.D. Cal. Sept. 13, 2012). The Federal Rules of Civil Procedure

14  provide a "broad right of discovery [] based on the general principle that litigants

15  have a right to every [person's] evidence." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th

16  Cir. 1993)(*quoting United States v. Bryan*, 339 U.S. 323, 331 (1950)); *accord In re*

17  *MGM Mirage Sec. Litig.*, No. 2:09-CV-1558-GMN, 2014 WL 6675732, at *2, *3

18  (D. Nev. Nov. 25, 2014). Indeed, though this is hardly one, fishing expeditions are

19  permitted. *Id.*

20       Notwithstanding the broad scope of discovery, Defendants make three

21  objections seeking to prevent discovery of an issue as obviously relevant as its

22  motives to commit fraud. They raise three arguments: (1) the documents sought by

23  the above requests are not relevant; (2) the document requests are overbroad; and

24  (3) the document requests seek information that is protected by the California and

25  U.S. constitution.

26

27

28

*a.*     *The documents are relevant.*

GKM earned much of its revenues from audits of Wey's clients. Compl. ¶ 13.[3] Many of its other clients referred to it by Wey committed substantial fraud. For example, AgFeed, another client of GKM referred to it by Wey, simply "creat[ed] non-existing businesses" to push through its IPO. Compl. 230(a). According to internal emails, insiders were puzzled that GKM did not discover their fraud, since it "can be easily detected by [the] external auditor." Compl. 230(b). Indeed, Agfeed showed GKM actual tax documents that conclusively established its fraud, because its revenues there were much smaller than it reported in its SEC filings. Compl. 230(d). GKM still signed off on the financials.

Wey received substantial compensation in his client's stock. Compl. ¶ 11. He then sold his stock at artificially inflated prices. *Id.* A competent auditor would discover Wey's clients' frauds. But if an auditor discovered that Wey's clients had committed fraud, Wey would not be able to sell his stock in them at elevated prices, and would have more difficulty both attracting new clients and concealing his clients' fraud from investors and the authorities. Thus, if Defendants refused to sign off on an audit, or blew the whistle on one of Wey's clients, he would stop referring clients to them. Compl. ¶13. Thus, while most auditors must cultivate a reputation for honesty and care,[4] Defendants' interests were to be Wey's rubber stamps, including when they audited Deer's financial statements.

A defendant's motive is, obviously, relevant in an action to recover for alleged fraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1258 (S.D. Cal. 2010). Indeed, in the Ninth Circuit, plaintiffs can defeat summary judgment in a securities

---

[3] Citations to "Compl. ¶ __" are to paragraphs of the Second Amended Complaint, dkt. # 45. Citations to "Horne Dec. Ex. __" are to Exhibits to the Declaration of Jonathan Horne, filed herewith.

[4] *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir. 1994)

-8-

1    fraud case simply by showing that a defendant had a motive to commit fraud and
2    the opportunity to do so. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063-64 (9th
3    Cir. 2000).

4         Evidence that Defendants were Wey's clients' rubber stamps need not come
5    from their audit of Deer. Yet Defendants have refused to produce any documents
6    except those which relate specifically to Defendants' audit of Deer. Defendants thus
7    propose that they be exempted from having to produce a host of critical documents,
8    including potentially several smoking guns, such as:

9         • Documents establishing payoffs from other clients referred by Wey to
10           sign off on their audits;

11        • Documents establishing inappropriate payments or bribes made
12           directly to Defendants by Wey;

13        • Documents evidencing agreements with Wey to provide Defendants
14           with lucrative jobs "consulting" for Wey's clients to reward
15           Defendants for signing off on audits of Wey's clients, including Deer;

16        • Documents showing the proportion of GKM's total revenues that were
17           earned from work performed for Wey's clients.

18        These are only examples. There are a host of other potentially highly relevant
19   documents. And there is no doubt that Defendants' production will produce
20   evidence that Lead Plaintiffs cannot identify with particularity today. But the
21   Federal Rules of Civil Procedure do not require parties to specify what information
22   they seek from documents before being given a right to obtain them. *MGM*, 2014
23   WL 6675732, at *2, *3. Accordingly, documents concerning payments made by
24   Wey or other clients referred to Defendants by Wey are clearly relevant.

25             b.    *The information is not protected by the California and*
26                   *U.S. constitution.*

27        Defendants' claim that a constitutional privilege prevents them from
28   disclosing what their customers paid them is frivolous. First, Defendants have cited

1   no case holding that a customer has a constitutionally protected interest in avoiding

2   disclosure of its payments to third parties. Second, Defendants' argument proves

3   too much. Deer itself is a third party to this suit, having previously settled claims

4   against it. Any protection from disclosure of third parties' payments would also

5   protect Deer's payments and secrets, a position Defendants do not take, and which

6   does not pass the laugh test. Third, the parties have largely agreed to a protective

7   order entered in this case. Lead Plaintiffs may not share information about GKM's

8   other clients with third parties, other than with third parties or litigation support

9   personnel. And Lead Plaintiffs are obligated to seek to file any such information

10  under seal. Fourth, because the case is before the Court pursuant to its federal

11  question jurisdiction, the California constitution's protection of privacy is

12  inapplicable. *Herring v. Clark*, No. 1:05-CV-00079-LJO, 2011 WL 2433672, at *5

13  (E.D. Cal. June 14, 2011)

14          *c.      The requests are not overbroad or unduly burdensome.*

15          Notwithstanding Defendants' claims of overbreadth, the requests are quite

16  narrow. 4 a. b. are limited to communications with Wey or the NYGG concerning

17  GKM's independence and fees it earns from auditing Wey's clients. According to

18  Defendants, they are independent professionals who audit Wey's clients financial

19  statements. They get paid by the audit clients – not Wey. They are purportedly

20  twice removed from receiving payments from Wey. Thus, the fact that Defendants

21  ***engaged in so many discussions about payments and independence with Wey that***

22  ***producing them is unduly burdensome*** suggests both that Defendants are

23  financially beholden to Wey and that these discussions include smoking-gun

24  evidence that Defendants are receiving inappropriate payments directly from Wey

25  to sign off on his client's audits. Accordingly, the request is neither overbroad nor

26  unduly burdensome.

27

28

Request No. 7 only demands "documents sufficient to show" the relevant information. It does not request "all documents concerning" it. Defendants can satisfy their obligation by providing their own simple accounting records.

Request No. 9. calls for production of GKM's financial statements for the years from 2009 to 2013 – in other words, four documents. There is no burden.

### 3. Defendants' Position:

## B. Request No. 8.

### 1. Discovery at issue.

Lead Plaintiffs' Request No 8

Documents sufficient to show the identities of all persons who worked on any audit of Deer, and all such persons' employee files.

Defendants' Response to Request No. 8:

Objection, this request is overly broad in time and scope by calling for documents beyond the timeframe within which Responding Party provided audit services to Deer, is not reasonably calculated to lead to the discovery of admissible evidence at trial, is not relevant to the claims or defenses of any party to this action, calls for confidential and/or proprietary information, violates the Constitutionally protected rights of privacy guaranteed to this Responding Party and non-party individuals by the U.S. and California Constitutions, violates statutory protections afforded to non-party individuals under C.C.P. §1985.6 and *Cal. Civ. Code* §3295, among others, is vague, ambiguous, and compound, is unduly burdensome, harassing, and oppressive. Responding Party further objects to the extent this request calls for information subject to attorney/client privilege and/or work product doctrine.

Subject to and without waiver of said objections, Responding Party will only produce responsive and non-privileged documents in its possession, custody, or control pertaining to audit services provided to Deer by Responding Party that also reflect the identities of those individuals who provided such services. Responding Party will not provide the employee files for those individuals in its employ that provided audit services to Deer. To the extent that this request calls for Responding Party to produce the employee files of individuals working at BET, Responding Party is unable to comply, as those documents are not within its possession, custody, or control.

Responding Party further states that its discovery and investigation are not complete, and therefore reserves the right to supplement, modify and/or amend this response when such response is fully determined, up to and including the time of trial.

### 2. Lead Plaintiffs' Position:

The parties met and conferred, but were unable to resolve their differences.

(I)n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." *Heathman v. United States District Court,* 503 F.2d 1032, 1034 (9th Cir.1974) (*citing* 2B Barron & Holtzoff, Federal Practice and Procedure (Wright ed.1961), § 967 at 243; 4 Moore's Federal Practice, § 26.60(7) at 26–255; 8 Wright & Miller, Federal Practice & Procedure, Civil § 2016 at 123; Proposed Federal Rules of Evidence, Rules 501–02); *see also* Fed.R.Evid. 501. Accordingly, arguments that rely on application of California state law are disregarded.

*Herring v. Clark,* No. 1:05-CV-00079-LJO, 2011 WL 2433672, at *5 (E.D. Cal. June 14, 2011) (finding California state law protecting discovery of personnel files inapplicable because case was before court on federal question jurisdiction); *see also Heathman v. U.S. Dist. Court for Cent. Dist. of California,* 503 F.2d 1032, 1035 (9th Cir. 1974).

Under federal law, when a party seeks personnel files of employees "whose action or inaction has a direct bearing" on claims or defenses, courts will order production. *Cason v. Builders FirstSource-Se. Grp., Inc.*, 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001); *see also Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995 *ADL, LLC v. Tirakian*, No. CV2006-5076(SJF)(MDG, 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007); *ADL, LLC v. Tirakian*, No. CV2006-5076(SJF)(MDG, 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007). Any privacy concerns can be addressed through an appropriate protective order. *Cason*, 159 F. Supp. 2d at 247; *Wesley v. Gates*, No. C 08-2719 SI, 2009 WL 2380097, at *7 (N.D. Cal. July 31, 2009).[5]

Lead Plaintiffs charge that GKM conducted a reckless or intentionally fraudulent audit. The personnel files of GKM's employees who conducted the audit will contain, for example, training and education information, experience, any demerits or reprimands, and personnel evaluations. Such documents are obviously relevant.

In *Matter of Hawaii Corp.*, 88 F.R.D. 518, 523-24 (D. Haw. 1980), an indistinguishable case, the plaintiffs sued an auditor for, among other things, recklessly conducting its audit, raising general claims that the auditor failed to detect errors in the client's financial statements. The court allowed discovery because these general allegations raised the issue of whether the auditor appropriately selected, assigned, and supervised the employees. *Id.* This Court should reach the same result.

In opposition, Defendants have cited three cases to Lead Plaintiffs: *Official Unsecured Creditors Comm. of Media Vision Tech. v. Jain*, 215 F.R.D. 587, 590 (N.D. Cal. 2003); *New York Stock Exchange v. Sloan*, 22 Fed.R.Serv.2d 500, 1976 WL 169086, at *3 (S.D.N.Y.1976); and *In re Del-Val Fin. Corp. Sec. Litig.*, 158

---

[5] Lead Plaintiffs have no objection to Defendants' redacting medical data.

F.R.D. 275, 276 (S.D.N.Y. 1994). In *Media Vision Tech*, the parties agreed that the personnel records were "subject to the protection of privacy afforded by" the California Constitution. *Media Vision Tech*, 215 F.R.D. at 590. Since this is a federal question case, the California Constitution is inapplicable. *Herring*, 2011 WL 2433672, at *5. Further, in *Media Vision Tech*, the plaintiffs had already taken the depositions of the employees whose files they sought, and could not state a reason the files would impeach the employees' testimony. Here, Lead Plaintiffs seek production of the personnel files *to take* the employees' testimony, and the personnel files are thus much more relevant. Though decided under federal law, *Sloan* and its progeny, (which includes *Del-Val*), relied on a self-evaluative privilege. *F.T.C. v. TRW, Inc.*, 628 F.2d 207, 210 (D.C. Cir. 1980) (noting that *Sloan* is among cases that relied on the self-evaluative privilege). The Ninth Circuit has not recognized a self-critical analysis privilege. *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1076 n. 7 (9th Cir. 2000) ("[non-movant's] assertion of a self-critical analysis privilege is particularly questionable. This court has not recognized this novel privilege"); *accord Branch v. Umphenour*, No. 1:08-CV-01655-AWI, 2014 WL 3891813, at *7 (E.D. Cal. Aug. 7, 2014); *cf. Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) (no obligation to produce personnel files when data contained therein was publicly available).

## C.   Defendants' Redactions.

### 1.   Lead Plaintiffs' Position

Without making any disclosures, Defendants appear to have redacted portions of the documents they have produced to Lead Plaintiffs. The redactions are rampant throughout Defendants' entire first production of documents. While Defendants' refusal to justify the apparent redactions or even state whether or not they were made prevents a more definitive conclusion, the Defendants appear to

1  have redacted relevant information. For example, the Defendants appear to have

2  redacted:

3  • names of persons providing payments to GKM, and entire pages of

4  text. [GKM 000056 et seq];

5  • names of GKM's other clients referred to by Wey, even when the

6  audits were conducted at the same time, in the same place, and using

7  the same personnel, as Deer's audits [GKM 102 et seq]

8  • Regulators' criticisms of GKM's violations of auditing rules

9  [GKM000287 et seq]

10  It is inappropriate for a producing party to make unilateral relevance

11  redactions. *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2013 WL

12  1095456, at *2 (N.D. Cal. Mar. 7, 2013); *Bartholomew v. Avalon Capital Grp.,*

13  *Inc.*, 278 F.R.D. 441, 452 (D. Minn. 2011) ("[r]edaction is an inappropriate tool for

14  excluding alleged irrelevant information from documents that are otherwise

15  responsive to a discovery request.") *accord Salser v. Dyncorp Int'l, Inc.*, No. 12-

16  10960, 2014 WL 7139886, at *2 (E.D. Mich. Dec. 12, 2014) (same).

17  Defendants ignored three requests to meet and confer concerning their

18  redactions. Accordingly, Defendants should be ordered to produce unredacted

19  documents.

20  **III.   CONCLUSION.**

21  **A.   Plaintiffs' Conclusion**

22  For the foregoing reasons the Court should enter an Order:

23  (a)   Overruling Defendants objections to the Requests as detailed above,

24  and compelling Defendants to produce responsive documents to Requests 4 (a), 4

25  (b), 7, 8, and 9;

26  (b) Compelling Defendants to produce documents with no redactions made

27  on the basis of relevance.

28

1

2  Dated:  March __, 2012                    **HINSHAW & CULBERTSON**

3

4

5                                            By: _____

6                                                 John Sheller, Esq.
                                                 Attorneys for Defendants

7

8

9                                            **THE ROSEN LAW FIRM, P.A.**

10

11                                           By: _____

12                                                Laurence M. Rosen, Esq. (SBN 219683)

13                                           Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| **From:** | Sose Ohanian <sose@gkmllp.com> |
| **Sent:** | Friday, May 18, 2012 11:47 AM |
| **To:** | 'johnsonli' |
| **Subject:** | RE: Q1 Invoices |
| **Attachments:** | image001.jpg; image002.gif |

Hi Johnson,

Has            paid the balance to your firm for the audit? If so, I would like to include that in the offset schedule. Otherwise, I will get approval from the partners and wire to your firm. Please send me wire instructions. I want to make sure we have the latest bank information.

Thank you,

Sose Ohanian



*An Independent Member of the BDO Seidman Alliance*

Goldman Kurland and Mohidin, LLP
Certified Public Accountants and Advisors
16133 Ventura Blvd.
Suite 880
Encino, CA 91436

818-784-9000
818-784-9010 (fax)
www.gkmllp.com

Notice: This communication may contain privileged and confidential information protected by the *Electronic Communications Privacy Act*, 18 U.S.C. §§2510-2521. It is intended solely for the use of the above-named recipient(s). If you are not the intended recipient of this communication, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

**From:** johnsonli [mailto:johnsonli@evertrustcpa.com]
**Sent:** Wednesday, May 16, 2012 8:51 PM
**To:** Sose Ohanian
**Subject:** Re: Q1 Invoices

Sose:

i want to know whether your side agrees the offset sheet sent on April 23. or not.
if there is no further question on this offset, when can you make the payment to us?
let me know the estimated date and hence i would be able to solve our company's financial problems.

1

GKM 000056

Thanks
Johnson

2012-05-17



北京永信公平会计师事务所有限公司
Ever Trust CPAs Co.,Ltd

发件人：Sose Ohanian
发送时间：2012-05-05  06:20:11
收件人：'johnsonli'
抄送：
主题：Q1 Invoices
Hi Johnson,

Here are the Q1 invoices for Deer,          , and          . Let me know if you have any questions.

Thanks,

Sose Ohanian



*An Independent Member of the BDO Seidman Alliance*

Goldman Kurland and Mohidin, LLP
Certified Public Accountants and Advisors
16133 Ventura Blvd.
Suite 880
Encino, CA 91436

818-784-9000
818-784-9010 (fax)
www.gkmllp.com

Notice: This communication may contain privileged and confidential information protected by the *Electronic Communications Privacy Act*, 18 U.S.C. §§2510-2521. It is intended solely for the use of the above-named recipient(s). If you are not the intended recipient of this communication, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

GKM 000057

GKM 000058

GKM 000059

GKM 000060

GKM 000061

GKM 000062

GKM 000063

GKM 000064

GKM 000065

GKM 000066

GKM 000067

GKM 000068

GKM 000069

GKM 000070

GKM 000071

GKM 000072

GKM 000073

GKM 000074

GKM 000075

GKM 000076

1

GKM 000102

2

GKM 000103

**From:** peterchen [mailto:peterchen@evertrustcpa.com]
**Sent:** Thursday, February 23, 2012 5:37 PM
**To:** Karim Khan Muhammad
**Cc:** Ahmed; David; johnsonli
**Subject:** Re: FW: Schedule for 10Ks

Karim,
    As I mentioned in precious mails,the WPs of WINDER will be sent to you at about 3-4-2012.
Thanks.


2012-02-24

*陈创书/Peter Chen*       *高级经理/Senior Manager*



北京永信公平会计师事务所有限公司
Ever Trust CPAs Co.,Ltd.

北京市朝阳区光华路15号院泰达时代中心4号楼2004
Suit 2004,No.4 Apt,CCTD ,15 Guanghua Road,
Chaoyang District, Beijing,PRC 100026
Tel/电话: +86 10 85885762,85885763
Fax/传真: +86 10 85885764
E-mail: peterchen@evertrustcpa.com
http://www.evertrustcpa.com

发件人：Karim Khan Muhammad
发送时间：2012-02-24 00:57:45
收件人：peterchen@evertrustcpa.com; 'nickzhang'
抄送：johnsonli@evertrustcpa.com; David Goldman; Ahmed Mohidin
主题：FW: Schedule for 10Ks
Peter/Nick,
Please send us the timeline for the remaining work papers as per the below inquiry from Client's attorney.

Thanks.

*Karim Khan Muhammad, CPA*
*SEC Audit Manager*



*An Independent Member of the BDO Seidman Alliance*

3

**Goldman Kurland and Mohidin, LLP**
**Certified Public Accountants and Advisors**

16133 Ventura Blvd., Suite 880
Encino, CA  91436
T 818-784-9000
F 818-784-9010

**Please visit our website at:  gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately.

---

**From:** Kenneth Marx [mailto:kmarx@newmanmorrison.com]
**Sent:** Thursday, February 23, 2012 8:54 AM
**To:** Karim Mohammad
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Thank you, Karim.

Do you have estimates on when the missing working papers will be received?

Ken

**From:** Karim Khan Muhammad [mailto:karim@gkmllp.com]
**Sent:** Thursday, February 23, 2012 11:49 AM
**To:** Kenneth Marx
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Ken,

For Deer we have received work papers of Deer tech, Anlin tech, Delta, Shunde and parent company. Winder work papers are not received yet.

Thanks.

*Karim Khan Muhammad, CPA*
*SEC Audit Manager*



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**

4

GKM 000105

**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA  91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:  gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately.

**From:** Kenneth Marx [mailto:kmarx@newmanmorrison.com]
**Sent:** Thursday, February 23, 2012 8:48 AM
**To:** Karim Mohammad
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Karim:

Does Evertrust remain on the schedule provided for delivery of working papers of all three companies?

Did you receive the                  papers today as expected?

Thank you for the continued updates.

Ken

**From:** Karim Khan Muhammad [mailto:karim@gkmllp.com]
**Sent:** Thursday, February 09, 2012 2:14 PM
**To:** Mitul Patel; Ahmed Mohidin; David Goldman
**Cc:** Kenneth Marx; 'yvonnezhangcpa'; 'Yvonne Zhang'
**Subject:** RE: Schedule for 10Ks

Mitul,
Following dates received from Evertrust to receive first set of WPs.

2.   Deer – March 4, 2012 &

Thanks.

*Karim Khan Muhammad, CPA*
*SEC Audit Manager*



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**

5

GKM 000106

**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA  91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:  gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from
disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited.  If you have
received this communication in error, please notify us immediately.

**From:** Mitul Patel [mailto:mpatel@newmanmorrison.com]
**Sent:** Wednesday, February 08, 2012 3:07 PM
**To:** Karim Mohammad; Ahmed Mohidin; David Goldman
**Cc:** Kenneth Marx
**Subject:** FW: Schedule for 10Ks

Dear Ahmed, David and Karim,

Could you give me a sense of when the audited trial balances will be ready for                  and DEER?

Thank you.

Mitul

**From:** yvonne@vtrustcpa.com [mailto:yvonne@vtrustcpa.com]
**Sent:** Wednesday, February 08, 2012 6:05 PM
**To:** Mitul Patel
**Cc:** Kenneth Marx; amy@diligencycorp.com
**Subject:** RE: Schedule for 10Ks

Hi Mitul

For                  and DEER, I will be finishing all the US parent company book for auditor by mid of
next week, but wouldn't be able to tell the date for the draft of FS, footnote and MDA, because it will be
depending on when the auditor will give me audited trial balance, however, I should be able to have a
draft set within 2 weeks from the date of receiving audited TB from auditor.

Thanks

Yvonne

> -------- Original Message --------
> Subject: Schedule for 10Ks
> From: Mitul Patel <mpatel@newmanmorrison.com>
> Date: Wed, February 08, 2012 2:54 pm
> To: 'yvonne' <yvonne@vtrustcpa.com>
> Cc: Kenneth Marx <kmarx@newmanmorrison.com>
>
> Dear Yvonne,

GKM 000107

Could you give us a sense of scheduling for the 10Ks for Deer,
and perhaps the date we can expect the initial drafts of the financials, notes and MD&A for each of these companies?


Thank you.

MITUL PATEL
**NEWMAN & MORRISON LLP**
44 Wall Street, New York, NY 10005
Tel: (212) 248-1001 | Fax: (212) 232-0386
mpatel@newmanmorrison.com   www.newmanmorrison.com

GKM 000108

**From:** peterchen [mailto:peterchen@evertrustcpa.com]
**Sent:** Thursday, February 23, 2012 5:37 PM
**To:** Karim Khan Muhammad
**Cc:** Ahmed; David; johnsonli
**Subject:** Re: FW: Schedule for 10Ks

Karim,
    As I mentioned in precious mails,the WPs of WINDER will be sent to you at about 3-4-2012.
    Thanks.


2012-02-24

陈剑书/Peter Chen      高级经理/Senior Manager

1

GKM 000109



北京永信公平会计师事务所有限公司
Ever Trust CPAs Co.,Ltd.

北京市朝阳区光华路15号院泰达时代中心4号楼2004
Suit 2004,No.4 Apt,CCTD ,15 Guanghua Road,
Chaoyang District, Beijing,PRC 100026
Tel/电话: +86 10 85885762,85885763

Fax/传真: +86 10 85885764
E-mail: peterchen@evertrustcpa.com
http://www.evertrustcpa.com

发件人：Karim Khan Muhammad
发送时间：2012-02-24 00:57:45
收件人：peterchen@evertrustcpa.com; 'nickzhang'
抄送：johnsonli@evertrustcpa.com; David Goldman; Ahmed Mohidin
主题：FW: Schedule for 10Ks
Peter/Nick,
Please send us the timeline for the remaining work papers as per the below inquiry from Client's attorney.

Thanks.

**Karim Khan Muhammad, CPA**
**SEC Audit Manager**



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**
**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA  91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:  gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

GKM 000110

**From:** Kenneth Marx [mailto:kmarx@newmanmorrison.com]
**Sent:** Thursday, February 23, 2012 8:54 AM
**To:** Karim Mohammad
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Thank you, Karim.

Do you have estimates on when the missing working papers will be received?

Ken

**From:** Karim Khan Muhammad [mailto:karim@gkmllp.com]
**Sent:** Thursday, February 23, 2012 11:49 AM
**To:** Kenneth Marx
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Ken,

For Deer we have received work papers of Deer tech, Anlin tech, Delta, Shunde and parent company. Winder work papers are not received yet.

Thanks.

**Karim Khan Muhammad, CPA**
**SEC Audit Manager**



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**
**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA 91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:   gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

3

GKM 000111

**From:** Kenneth Marx [mailto:kmarx@newmanmorrison.com]
**Sent:** Thursday, February 23, 2012 8:48 AM
**To:** Karim Mohammad
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Karim:

Does Evertrust remain on the schedule provided for delivery of working papers of all three companies?

Did you receive the               papers today as expected?

Thank you for the continued updates.

Ken

**From:** Karim Khan Muhammad [mailto:karim@gkmllp.com]
**Sent:** Thursday, February 09, 2012 2:14 PM
**To:** Mitul Patel; Ahmed Mohidin; David Goldman
**Cc:** Kenneth Marx; 'yvonnezhangcpa'; 'Yvonne Zhang'
**Subject:** RE: Schedule for 10Ks

Mitul,
Following dates received from Evertrust to receive first set of WPs.


  2.   Deer – March 4, 2012 &


Thanks.

**Karim Khan Muhammad, CPA**
**SEC Audit Manager**



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**
**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA  91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:   gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.

4

**From:** Mitul Patel [mailto:mpatel@newmanmorrison.com]
**Sent:** Wednesday, February 08, 2012 3:07 PM
**To:** Karim Mohammad; Ahmed Mohidin; David Goldman
**Cc:** Kenneth Marx
**Subject:** FW: Schedule for 10Ks

Dear Ahmed, David and Karim,

Could you give me a sense of when the audited trial balances will be ready for                and DEER?

Thank you.

Mitul

---

**From:** yvonne@vtrustcpa.com [mailto:yvonne@vtrustcpa.com]
**Sent:** Wednesday, February 08, 2012 6:05 PM
**To:** Mitul Patel
**Cc:** Kenneth Marx; amy@diligencycorp.com
**Subject:** RE: Schedule for 10Ks

Hi Mitul

For                 and DEER, I will be finishing all the US parent company book for auditor by mid of next week, but wouldn't be able to tell the date for the draft of FS, footnote and MDA, because it will be depending on when the auditor will give me audited trial balance, however, I should be able to have a draft set within 2 weeks from the date of receiving audited TB from auditor.

Thanks

Yvonne

-------- Original Message --------
Subject: Schedule for 10Ks
From: Mitul Patel <mpatel@newmanmorrison.com>
Date: Wed, February 08, 2012 2:54 pm
To: 'yvonne' <yvonne@vtrustcpa.com>
Cc: Kenneth Marx <kmarx@newmanmorrison.com>

Dear Yvonne,

Could you give us a sense of scheduling for the 10Ks for Deer,
and perhaps the date we can expect the initial drafts of the financials, notes and MD&A for each of these companies?


Thank you.

MITUL PATEL
NEWMAN & MORRISON LLP
44 Wall Street, New York, NY 10005
Tel: (212) 248-1001 | Fax: (212) 232-0386
mpatel@newmanmorrison.com | www.newmanmorrison.com

GKM 000113

**From:** Karim Khan Muhammad <karim@gkmllp.com>
**Date:** Thu, 23 Feb 2012 08:49:21 -0800
**To:** 'Kenneth Marx' <kmarx@newmanmorrison.com>
**Cc:** Yvonne Zhang <yvonne@diligencycorp.com>, 'Mitul Patel' <mpatel@newmanmorrison.com>, Ahmed Mohidin

1

GKM 000114

<ahmed@gkmllp.com>, David Goldman <david@gkmllp.com>
**Subject:** RE: Schedule for 10Ks

Ken,

For Deer we have received work papers of Deer tech, Anlin tech, Delta, Shunde and parent company. Winder work papers are not received yet.

Thanks.

*Karim Khan Muhammad, CPA*
*SEC Audit Manager*



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**
**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA  91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:   gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately.

**From:** Kenneth Marx [mailto:kmarx@newmanmorrison.com]
**Sent:** Thursday, February 23, 2012 8:48 AM
**To:** Karim Mohammad
**Cc:** 'Yvonne Zhang'; Mitul Patel; Ahmed Mohidin; David Goldman
**Subject:** RE: Schedule for 10Ks

Karim:

Does Evertrust remain on the schedule provided for delivery of working papers of all three companies?

Did you receive the                papers today as expected?

Thank you for the continued updates.

Ken

GKM 000115

**From:** Karim Khan Muhammad [mailto:karim@gkmllp.com]
**Sent:** Thursday, February 09, 2012 2:14 PM
**To:** Mitul Patel; Ahmed Mohidin; David Goldman
**Cc:** Kenneth Marx; 'yvonnezhangcpa'; 'Yvonne Zhang'
**Subject:** RE: Schedule for 10Ks

Mitul,
Following dates received from Evertrust to receive first set of WPs.

    2.  Deer – March 4, 2012 &

Thanks.

*Karim Khan Muhammad, CPA*
*SEC Audit Manager*



*An Independent Member of the BDO Seidman Alliance*

**Goldman Kurland and Mohidin, LLP**
**Certified Public Accountants and Advisors**

**16133 Ventura Blvd., Suite 880**
**Encino, CA  91436**
**T 818-784-9000**
**F 818-784-9010**

**Please visit our website at:  gkmllp.com**

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any use of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately.

---

**From:** Mitul Patel [mailto:mpatel@newmanmorrison.com]
**Sent:** Wednesday, February 08, 2012 3:07 PM
**To:** Karim Mohammad; Ahmed Mohidin; David Goldman
**Cc:** Kenneth Marx
**Subject:** FW: Schedule for 10Ks

Dear Ahmed, David and Karim,

Could you give me a sense of when the audited trial balances will be ready for      and DEER?

Thank you.

Mitul

GKM 000116

**From:** yvonne@vtrustcpa.com [mailto:yvonne@vtrustcpa.com]
**Sent:** Wednesday, February 08, 2012 6:05 PM
**To:** Mitul Patel
**Cc:** Kenneth Marx; amy@diligencycorp.com
**Subject:** RE: Schedule for 10Ks

Hi Mitul

For           and DEER, I will be finishing all the US parent company book for auditor by mid of next week, but wouldn't be able to tell the date for the draft of FS, footnote and MDA, because it will be depending on when the auditor will give me audited trial balance, however, I should be able to have a draft set within 2 weeks from the date of receiving audited TB from auditor.

Thanks

Yvonne

-------- Original Message --------
Subject: Schedule for 10Ks
From: Mitul Patel <mpatel@newmanmorrison.com>
Date: Wed, February 08, 2012 2:54 pm
To: 'yvonne' <yvonne@vtrustcpa.com>
Cc: Kenneth Marx <kmarx@newmanmorrison.com>

Dear Yvonne,

Could you give us a sense of scheduling for the 10Ks for Deer,
           and perhaps the date we can expect the initial drafts of the financials, notes and MD&A for each of these companies?


Thank you.

MITUL PATEL
NEWMAN & MORRISON LLP
44 Wall Street, New York, NY 10005
Tel: (212) 248-1001 | Fax: (212) 232-0386
mpatel@newmanmorrison.com | www.newmanmorrison.com

4

GKM 000117

# PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD
## SMALL FIRM INSPECTION COMMENT FORM

| | | | |
|---|---|---|---|
| Firm: | Goldman Kurland and Mohidin, LLP | Date: | 12/14/2011 |
| Office: | Encino, CA | Issuers' FYE: | 12/31/2010 |
| Issuers: | | Control Number: | |
| | Deer Consumer Products, Inc. | | QC-02 |

---

**PCAOB Comment – Facts:**

During the inspection period, the Firm conducted audits of the December 31, 2010 consolidated financial statements of                                                         Deer
Consumer Products, Inc., and

AU 316, *Consideration of Fraud in a Financial Statement Audit*, states that the auditor has a responsibility to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. AU 316 provides various audit procedures that should be performed by the auditor during the audit, including:

- Obtain an understanding of the entity's financial reporting process and the controls over journal entries and other adjustments.
- Identify and select journal entries and other adjustments for testing.
- Inquire of individuals involved in the financial reporting process about inappropriate or unusual activity relating to the processing of journal entries and other adjustments.

AU 316 provides further guidance for the auditor to consider in determining the nature, timing and extent of the audit procedures to be performed, as well as certain documentation requirements of the auditor's consideration of fraud[1].

The following items provide general observations and/or specific issuer examples of certain findings of the inspection team related to the Firm's audit procedures to address the risk of fraud, as well as certain of the inspection team's observations of those procedures:

---

[1] The auditor should also consider the documentation requirements of Auditing Standard No. 3, *Audit Documentation*.

GKM 000284

For the Deer Consumer Products, Inc. audit, the Firm identified a population of journal entries for testing, but limited the testing for evidence of possible misstatement due to fraud to the monthly income tax provision journal entries.

**I have read the facts as presented above and agree ☑ or disagree ☐.  (If disagree, provide reasons below.)**

**Firm Representative:**

|  |  |
|---|---|
| *AHMED MOHIDIN-PARTNER* | *Ahmed Mohidin 12/9/11* |
| **Printed Name and Title** | **Signature and Date** |

**PCAOB Comment – Issue:**

The Firm's system of quality control appears not to provide sufficient assurance that the Firm will perform all of the required fraud-related procedures in accordance with the provisions of AU 316, *Consideration of Fraud in a Financial Statement Audit.*  Specifically, for
                                                                    Deer Consumer Products, Inc., and
                                        , the Firm did not perform sufficient audit procedures to test journal entries and other adjustments for evidence of possible material misstatements due to fraud.

2

GKM 000285

| PCAOB Reviewer: | Renee Kimoto | /s/ Renee Kimoto 12/13/11 |
|---|---|---|
| | Printed Name | Signature and Date |
| PCAOB Inspection Leader: | Jack Potthast | /s/ Jack Potthast 12/13/11 |
| | Printed Name | Signature and Date |

**Firm's Response** (Indicate agreement or disagreement with the issue(s) noted above and specific reasons to support your response.  If your response includes procedures performed by the engagement team, indicate if procedures were performed and documented during the audit; if procedures were performed but not documented during the audit; or if procedures were performed and/or documented subsequent to the audit.):

**Firm's Remedial Action(s)** (if applicable, consider the requirements of AU 390 and/or AU 561):

**Firm Representative Responsible for the Firm's Response and/or Remedial Action(s):**

| Firm Representative: | | |
|---|---|---|
| | Printed Name and Title | Signature and Date |

3

GKM 000286

# EXHIBIT "L"

**DeSejournet, et al. v. Goldman Kurland and Mohidin LLP, et al.**

Melanie Davis  to: jhorne                                            02/04/2015 04:11 PM
Cc:  Renee Choy Ohlendorf, John W Sheller

History:              This message has been forwarded.

Dear Mr. Horne,

Please see attached correspondence in connection with this matter.  Thank you.

**Melanie Davis**
Assistant to: Daniel Sanchez-Behar, Renee Choy Ohlendorf & Filomena E. Meyer
Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000  |  Fax: 310-909-8001
E-mail: MDavis@hinshawlaw.com



20150204161118192.pdf



**HINSHAW**
& CULBERTSON LLP

**ATTORNEYS AT LAW**

11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025

310-909-8000
310-909-8001 (fax)
www.hinshawlaw.com

February 4, 2015

**VIA EMAIL**

Jonathan Horne, Esq.
The Rosen Law Group, P.A.
275 Madison Ave., 34th Floor
New York, NY 10016

   *Re:* *De Sejournet, et al. v. Goldman Kurland and Mohidin LLP, et al.,*
     *C.D. Cal. Case No. 13-cv-01682-DMG-MRW*

Dear Mr. Horne:

  This letter responds to your meet and confer email dated January 27, 2015, and the L.R.
37-1 Joint Stipulation sent on January 30, 2015, collectively regarding Defendants' Responses to
Plaintiff's Requests for Production Nos. 4(a) and (b), 7, 8, and 9.

  As a preliminary matter, we note that contrary to your assertion in the Joint Stipulation,
there has been **no refusal to meet and confer with you or ignoring your meet and confers**, as
evidenced by the lengthy correspondence that we have exchanged on these issues. Rather,
Plaintiffs have failed to give Defendants a **meaningful** opportunity to respond to Plaintiffs' meet
and confer correspondence by continually and arbitrarily demanding that defense counsel review,
research and respond to their emails and cited authorities by the same or next day, and then
serving a proposed L.R. 37-1 Stipulation before Defendants had any meaningful opportunity to
respond, rather than further attempting to narrow the discovery dispute as required by L.R. 37-1.

  Despite that, and in a good faith attempt to further resolve our discovery differences,
Defendants are offering the following proposals. Should any or all of these proposals be
unsatisfactory to Plaintiffs, we can revisit the Joint Stipulation at a later time.

  **1.** **Request for Production Nos. 4(a) and (b):** Defendants will produce all
correspondence between them and Benjamin Wey or NYGG that are in their possession,
custody, or control.

  **2.** **Request for Production No. 7:** Request No. 7 calls for "Documents sufficient to
show the names of all clients of Wey and/or NYGG who were also clients of GKM, and all fees
or revenues earned by GKM from these joint clients." According to your email, "Documents
sufficient to show" means "enough documents to compile a list" and not "all documents". It is
not clear what is meant by "enough". However, by Plaintiffs' statement that they are not seeking

*Building on the Barger Tradition*

Arizona California Florida Illinois Indiana Massachusetts Minnesota Missouri New York Rhode Island Wisconsin ♦ London

Jonathan Horne, Esq.
February 4, 2015
Page 2

"all documents", the parties seem to be in agreement that Plaintiffs are not entitled to the entire
audit work files for joint GKM/Wey clients, which are not relevant, would be unduly
burdensome to produce, and are subject to a right of privacy.[1]

It appears what Plaintiffs truly seek is information on GKM's fees charged for these joint
clients, i.e. GKM's invoices. The amount of GKM's audit fees are publicly available in the 10-K
filings for each of these joint filings and thus equally available to Plaintiffs. Moreover,
Defendants have already agreed to produce its invoices for Deer. Nevertheless, Defendants will
further agree to produce its invoices for each of the joint GKM/Wey clients in response to this
request. Defendants will not, however, produce the balance of its files for the joint GKM/Wey
clients.

   **3.   Request for Production No. 8:** This request calls for the personnel files of GKM
auditors. In the Joint Stipulation, Plaintiffs state for the first time they are specifically seeking
information on the auditors' training/education, and personnel evaluations for the auditors who
worked on the Deer audit. As previously stated, Defendants do not believe these materials are
relevant to Plaintiffs' claims, since only BET auditors are alleged to be incompetent in the SAC.

   Nevertheless, in a good faith attempt to resolve this discovery dispute, Defendants will
agree to produce the following portions of GKM personnel files for those auditors who worked
on the Deer audit: (1) resumes/CVs submitted in connection with the auditor's application for
employment, and (2) performance evaluations. These materials will only be produced upon
entry of an mutually agreed protective order by the court.

   However, Defendants do not agree to produce the balance of these personnel files, which
contain information that is irrelevant and subject to constitutional privacy rights, such as salary,
employment benefits, tax, immigration status, and/or medical information. Plaintiffs have
already stated they do not object to redaction of medical data.

   **4.   Request for Production No. 9:** Request No. 9 calls for "GKM's financial
statements for each of its fiscal years from 2009 to 2013." This request essentially seeks to open
up the books on all the financials of GKM's <u>entire business</u>, not just fees charged to Deer and
joint GKM/Wey clients.

   Plaintiffs continue to argue that GKM's financial statements are discoverable, but to date
have not cited to a single case which holds that a plaintiff may open up the auditor's own
financial books. Plaintiffs' latest cited authority, *Herring v. Clark*, 2011 WL 2433672 (E.D. Cal.
June 14, 2011), likewise does not support their position. Even if the Court chooses not to apply
the California state law on privacy, federal courts still recognize a federal right of privacy under
the U.S. Constitution, as Plaintiffs have previously acknowledged. Again, there are less invasive

---

[1] We further note that Plaintiffs' statement in the Joint Stipulation at 10:21-22 that "Defendants engaged in so many
discussions about payments and independence with Wey that producing them is unduly burdensome" is blatantly
inaccurate, misrepresents the record, and completely misconstrues Defendants' objections and meet and confer
attempts. What we stated would be "unduly burdensome" (and an unwarranted invasion of both federal and state
privacy rights) is the production of the <u>entire audit files</u> for the each of the joint GKM/Wey clients, including the
audit work papers, underlying papers, correspondence, etc.

Jonathan Horne, Esq.
February 4, 2015
Page 3

ways to inquire as to how much of GKM's business was devoted to servicing Wey clients to establish scienter besides demanding financial sheets.

Nevertheless, Defendants will agree to produce revenue information for Mr. Mohidin's clients for 2009-2013, which should be sufficient for Plaintiffs to determine how much of Mr. Mohidin's business is attributable to referrals from Benjamin Wey. Defendants do not agree to produce information about revenues generated by clients of other partners. The clients of other GKM partners were not referred by Benjamin Wey, and the revenues generated by business from those clients are not at issue, are not relevant, and are subject to a right of privacy.

5. **Redactions**: We have previously informed you that we will be providing a privilege log regarding redacted information, and thus your assertions that we have "ignored" your meet and confer attempts on these redactions is without merit. The redacted information pertains to other GKM clients, many of whom were not clients of Wey or NYGG. Information about audit or accounting services provided to these third parties are not only irrelevant to the propriety of the Deer audit, but subject to the right of privacy afforded to these third parties by the U.S. and California constitutions. If Plaintiffs contend they are also entitled to confidential communications and audit files regarding services provided to non-Wey/NYGG clients, please advise of the basis for such a claim.

Should you wish to discuss further, please contact me or John Sheller.

Very truly yours,

HINSHAW & CULBERTSON LLP

Renee Choy Ohlendorf
rohlendorf@hinshawlaw.com

RCO:
cc:    John W. Sheller, Esq. (via email)

31578021v1 0945434

# EXHIBIT "M"



**RE: de Sejournet v. Goldman Kurland Mohidin**

Jonathan Horne to: rchoy@hinshawlaw.com

Cc: "jsheller@hinshawlaw.com", "Rosen, Laurence"

02/03/2015 07:56 AM

I think we are having a philosophical difference here. Violation of a protective order is contempt of court. A protective order is appropriate for rule-based issues - e.g., returning documents when they are asked for. It is not appropriate for judgment calls - e.g., is this document arguably privileged. I am just not going to sign a stipulated protective order that subjects me to contempt of court for making a mistake in a judgment call about whether a document you produced to us is privileged. Particularly supposing you already have all the protection you need from California rules of professional responsibility, as you claim below. Let me know if we need to go to the Court. I'm not budging.

**From:** rchoy@hinshawlaw.com [mailto:rchoy@hinshawlaw.com]
**Sent:** Monday, February 02, 2015 6:37 PM
**To:** Jonathan Horne
**Cc:** jsheller@hinshawlaw.com; Rosen, Laurence
**Subject:** RE: de Sejournet v. Goldman Kurland Mohidin

Jonathan,
We do not agree to the revisions that you have made to our proposed Paragraph 9 on clawback. In its current form, provisions for a party that inadvertently receives privileged documents are deleted, as are provisions regarding return, destruction, and use of privileged information. As drafted, this seems to suggest that a receiving party that discovers inadvertent disclosure of privileged information need not disclose that discovery until the inadvertently producing party discovers the mistake and gives notice, and/or may keep, review, and rely upon that privileged information. That is not the law in California, and out-of-state attorneys who pro hac in are also bound by California ethics rules. *See* F.R.C.P. 26(b)(5)(B); *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001); *Clark v. Sup. Ct.* (2011) 196 Cal.App.4th 37; *Rico v. Mitsubishi* (2007) 42 Cal.4th 807; *State Compensation Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644. As such, please re-insert the language we had originally.

A few other minor changes:

Para 2.5: change 3426.1 to 3426, et seq.
Para. 9.1: parentheticals should be added in F.R.E. 502(e)

Thanks.

**Renee Choy Ohlendorf, Esq.**

Hinshaw & Culbertson LLP
11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025
Tel: 310-909-8000 | Fax: 310-909-8001
E-mail: rchoy@hinshawlaw.com



**HINSHAW**
& CULBERTSON LLP

Formatted: Font: Not Bold

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTOINE DE SEJOURNET, ADAM HELNICK, and LINDA HOLDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiff,<br>          vs.<br><br>GOLDMAN KURLAND AND MOHIDIN, LLP, and AHMED MOHIDIN,<br><br>                    Defendants. | CASE No.: 13-cv-1682-DMG (MRWx)<br><br>**[PROPOSED] PROTECTIVE ORDER**<br><br>JURY TRIAL DEMANDED |

Lead Plaintiffs Antoine De Sejournet, Adam Helnick and Linda Holder (the "Plaintiffs"), and Defendants Goldman Kurland and Mohidin, LLP, ("Goldman") and Ahmed Mohidin (the "Defendants, and with the Plaintiffs, the "Parties"), by and through their respective counsel, hereby stipulate, subject to Court approval, as follows:

**1.    PURPOSES AND LIMITATIONS**

1.1.    The Parties anticipate that information and documents may be disclosed by and among the parties in the court of discovery in the above-captioned action ("the Action");

1.2.    The Parties believe that such information and documents may contain material that is of a confidential, sensitive, personal, commercial, or

proprietary nature, and/or may contain material as to which disclosure is restricted by applicable laws and regulations;

    1.3.    The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    **DEFINITIONS**

    2.1.    Party:  Plaintiffs, Defendants, and any of their officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

    2.2.    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not identified as a Party at paragraph 2.1.

    2.3.    ~~Disclosing~~Producing Party: a Party, or a Non-Party who provides testimony or ~~produce~~produces documents or other ~~material.~~ materials pursuant to compulsory process in this action.

    2.4.    Receiving Party:  a Party or Non-Party who receives testimony or documents or other material.

    2.5.    Confidential Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c) or California Civil Code

§3426.1.

Formatted: Font: Not Bold

2.6.   Protected Material:  all documents and information that has been designated "Confidential."

2.7.   Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well as their support staff).

2.8.   House Counsel:  attorneys who are employees of a Party to this action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9.   Outside Counsel:  attorneys who are not employees of a Party to this action, but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.10.  Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this litigation.  This definition includes a professional jury or trial consultant retained in connection with this litigation and any participants in a focus group, mock trial or research connected with case preparation.  This definition further includes the partners, associates and employees of the firm which employs such consultant or expert.

2.11.  Vendor:  a person or entity which provides litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and its employees and subcontractors.

2.12.  Electronic Data:  information stored or recorded in the form of

electronic or magnetic media (including information, files, databases or programs stored on any digital or analog machine-readable device, computers, discs, networks or tapes).

**3.    SCOPE AND BREADTH**

3.1.    The protections conferred by this Order cover Protected Material, including (1) any information copied or extracted from Protected Material; (2) any copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Order shall not apply to any document or information which: (a) was in the public domain at the time of disclosure or became part of the public domain after its disclosure, not as a result of a violation of this order; or (b) was discovered independently and lawfully by the Receiving Party.

3.2.    This Order is binding on all Parties to this action, on all Non-Parties who have agreed to be bound by this Order, and on all others who have signed the document attached hereto as Exhibit A, and shall remain in force and effect until modified, superseded, or terminated by consent of the parties or by order of the Court.

**4.    DURATION**

Even after final disposition of the Litigation, the confidentiality obligations imposed by this Order shall remain in effect unless and until the Producing Party agrees otherwise in writing or a court order, except that nothing in this Order prevents a Receiving Party from following his, her, or its legal obligations imposed by other law. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with prejudice; and (2) final

Formatted: Font: Not Bold

judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law. The Court retains jurisdiction over this action for enforcement of the provisions of this Order following the final disposition of this litigation.

**5.     DESIGNATING PROTECTED MATERIAL**

5.1.   Designation of Confidentiality

(a)     ~~The Parties, and third parties subpoenaed by one of the Parties,~~Producing Parties may designate as "CONFIDENTIAL" documents, testimony, written responses, or other materials produced in this action if they contain information that the producing party has a good faith basis for asserting is confidential under the applicable legal standards.

(b)     If it comes to any Producing Party's attention that information or items he, she, or it designated for protection do not qualify for protection, then the Producing Party shall promptly notify all Parties that it is withdrawing the mistaken designation.

5.2.   Manner and Timing of Designations. Materials or Information may be designated "Confidential" within the meaning of this Order in the following ways:

(a)     Documents: Except as otherwise provided in this Order, or as otherwise stipulated or ordered, documents that qualify for protection under this Order must be clearly so designated before the material is disclosed or produced. To designate Confidential Information, Producing Parties will affix the legend "CONFIDENTIAL" to each page that contains Confidential Information. If only a portion or portions of the material on a page qualifies for protection, Producing Parties must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins).

Formatted: Font: Not Bold

Comment [A1]: "Producing Party" includes third parties.

~~(b)     Testimony:  Designation of a deposition or other pretrial~~
~~testimony, or portions thereof, as "CONFIDENTIAL" shall be made by a statement~~
~~on the record by counsel for the party or other person making the claim of~~
~~confidentiality at the time of such testimony.  The portions of depositions so~~
~~designated as "CONFIDENTIAL" shall be taken only in the presence of persons~~
~~qualified to receive such information pursuant to the terms of this Order.   The~~
~~failure of any other person to comply with a request to leave the deposition room~~
~~will constitute sufficient justification for the witness to refuse to answer any~~
~~question calling for disclosure of "CONFIDENTIAL" information so long as~~
~~persons are in attendance who are not entitled by this Order to have access to~~
~~"CONFIDENTIAL" information.  The Parties may instruct the court reporter to~~
~~segregate such portions of the deposition in a separate transcript designated as~~
~~'CONFIDENTIAL."  Portions of such deposition transcripts shall be clearly marked~~
~~as "CONFIDENTIAL" on the cover or on each page, as appropriate.~~

> **Formatted:** Font: Not Bold

> **Comment [A2]:** This is unnecessary, as it falls within the definition of "disclosure".

    5.3.    Inadvertent Failures to Designate.

        (a)     The inadvertent or unintentional disclosure by a Producing
Party of Confidential Information without the appropriate designation at the time of
disclosure shall not be deemed a waiver in whole or in part of the Producing Party's
claim of confidentiality as to the specific information disclosed.  Upon learning of
an inadvertent or unintentional disclosure of Confidential Information without the
appropriate designation, the Producing Party shall within fourteen (14) days notify
the Receiving Party, in writing, of the error and identify (by bates number or other
individually identifiable information) the affected documents and their new
designation or re-designation and promptly supply copies of such materials with the
appropriate designations.  If timely corrected, an inadvertent failure to designate
qualified information or items does not, standing alone, waive the Receiving Party's

1  right to secure protection under this Order for such material.  Upon timely correction

2  of a designation, the Receiving Party must make reasonable efforts to assure that the

3  material is treated in accordance with the provisions of this Order

4          (b)    A Receiving Party's compliance with the terms of this

5  Order shall not operate as an admission that any particular document is or is not (a)

6  confidential, (b) privileged or (c) admissible in evidence at trial.

7      5.4.    Challenges to Confidentiality Designation

8

9  (a)   Each party reserves the right to dispute the designation of a document or other

10  information as "CONFIDENTIAL" by any other party or subpoenaed party in

11  accordance with this Order.).  If a party believes that any documents or materials

12  have been inappropriately designated by another party or subpoenaed partyas

13  Confidential Information by a Producing Party, that party shall confer with the

14  Producing Party or its counsel for the designating party.  The parties shall, and

15  attempt to resolve such disagreements before submitting them to Court pursuant to

16  seeking the Court's resolution, as provided by Local Rule 37-1.  The designating

17  party must assess whether redaction is a viable alternative to complete non-

18  disclosure.  If the parties are unable to discussions do not resolve the matter

19  informally, a partyParty may file an appropriate challenge the designation by filing a

20  motion beforewith the Court.  Regardless of which party files the motion, the party

21  seeking to protect a document from disclosureThe Producing Party bears the burden

22  of establishing good cause for why the document should not be disclosed.  A party

23  who disagrees with another party's designation must treat the designated document

24  in accordance with this OrderThe information will be treated as Confidential

25  information until the matter is resolved by the agreement of the Parties orruled upon

26  by Order ofthe Court.

27

28

Formatted: Font: Not Bold

**6.    ACCESS TO AND USE OF PROTECTED MATERIAL**

Formatted: Font: Not Bold

6.1.    Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by a Producing Party only in connection with this litigation and only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When this litigation has been terminated, a Receiving Party must comply with the provisions of Section 11, below.

Protected Material must be stored and maintained by a Receiving Party at a location and in a manner that ensures that access is limited to the persons authorized under this Order.

6.2.    Nothing in this Order shall limit the use by any party, person, or entity of his, her, or its own ~~document or information for legitimate business purposes unrelated to this litigation, even if such documents or information have been designated as "CONFIDENTIAL".~~Confidential Information for any reason.

6.3.    Disclosure of Confidential Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Producing Party, a Receiving Party may disclose any information or item designated Confidential only to~~:~~ persons listed in Subparagraphs to this Paragraph. For the avoidance of doubt, Confidential Information is "disclosed" to a person if it is discussed in the presence of a person, including at a deposition.

(a)    the Receiving Party's Outside Counsel of record;

(b)    the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this litigation;

Formatted: Font: Not Bold

(c)   Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed Exhibit A to this Order;

(d)   Attorneys of record to the parties in this action (including legal assistants, secretaries, and other office employees);

(e)   the Court, or any other Court exercising jurisdiction with respect to this litigation (including appellate courts), and its personnel, including stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during this litigation, and any mediator retained in connection with this action;

(f)   court reporters or videographers and their staff, mediators and their staff, and Professional Vendors to whom disclosure is reasonably necessary for this litigation;

(g)   any Party; and

(h)   witnesses in this action to whom disclosure is reasonably necessary and who have signed Exhibit A to this Order.; Confidential Information or material may be disclosed to a witness, other than those not appearing pursuant to a subpoena, who refuses to sign the Exhibit A to this Order, provided that: (i) the disclosure is made for a proper purpose related to this action; (ii) Counsel for the party using the Confidential Information endeavors in good faith to redact or handle the Confidential Information in such a manner as to disclose no more Confidential Information than is reasonably necessary in order to examine the witness; (iii) the witness is not permitted to retain the Confidential Information after the witness is examined regarding the Confidential Information; and (iv) the witness is informed that the Confidential Information is protected by an Order from the Court and by federal and state law, and that misuse, misappropriation or wrongful disclosure of any Confidential Information might subject him or her to the Court's jurisdiction as well as to civil and/or criminal liability.  A deposition witness may review the entire

deposition transcript and exhibits thereto in order to review and sign pursuant to Fed. R. Civ. P. 30(e).   Witnesses who are shown Confidential, who will not sign Exhibit A to this Order, shall not be allowed to retain copies of the Confidential Information or Items in connection with the deponent's transcript review;

(i)     the author or recipient of a document containing the information, or a custodian or other person who otherwise possessed or knew the information; and

(j)     any other person only upon order of the Court or upon prior written consent of the Producing Party.

6.4.   Documents and materials filed with the Court.

~~(a)   Information and documents designated as "CONFIDENTIAL" shall not be filed with the Court or included in whole or in part in pleadings, motions, briefs, or other documents filed with the Court, except when any portion(s) of such pleadings, motions, briefs, or other documents are filed under seal with the authorization of the Court under Local Rule 79-5.1.~~

~~(b)~~(a) This Order does not grant a Party a right to file Confidential Information under seal. A Party who wishes to file with the Court a document or information that has been designated Confidential Information must comply with all procedures set forth in Local Rule 79-5.

~~(c)~~(b) The Receiving Party who files a motion to seal has no obligation to make any argument that the Confidential Information should be sealed beyond representing to the Court that a Producing Party has designated such Confidential Information pursuant to this Order.

~~(d)~~(c) Where an application to file documents under seal has been granted, the Confidential Information shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the caption of this

Formatted: Font: Not Bold

Comment [A3]: We cannot agree to this provision. If the Court rules that information is not entitled to be filed under seal, the result has to be that we can file the information on the Court's public docket. It can't be that we cannot use the information.

litigation, a generic designation of the contents, the words "CONFIDENTIAL

Formatted: Font: Not Bold

INFORMATION and "SUBJECT TO COURT ORDER" and words in substantially

the following form:

        This envelope contains documents which are filed under seal in

this case by [name of party] and, by Order of this Court dated _____, shall not be

opened nor its contents displayed or revealed except as provided in that Order or by

further Order of the Court.

        (c)(d) Any pleading or other paper required to be filed under seal

pursuant to this Section shall also bear the legend "FILED UNDER SEAL" in the

upper-right hand corner of the cover page of the document.  Only those portions of

such documents and materials containing or reflecting Confidential Information

shall be considered Confidential and may be disclosed only in accordance with this

Order.  Where feasible, only those portions of such filings which contain

Confidential Information shall be filed under seal.  No Non-Party may have access

to any sealed document from the files of the Court without an order of the Court.

The Court's mandatory paper chambers copy of a sealed document shall be in the

form specified by Local Rule 79-5.1 and/or the Court's Standing Order, and shall

include a complete version of the documents with an appropriate notation

identifying the document or the portion of the document that has been filed under

seal.

        (f)(e) Each document filed under seal may be returned to the

Party which filed it (i) if no appeal is taken, within ninety days after a final

judgment is rendered, or (ii) if an appeal is taken, within thirty days after the

mandate of the last reviewing court which disposes of this litigation in its entirety is

filed ("the final resolution of this litigation").  If the Party that filed a sealed

document fails to remove the document within the appropriate time frame, the Clerk

may destroy the document or return the document to counsel for the Producing Party

upon request and within two years after termination of the litigation.

(g)(f)  Where an application to file under seal has been denied on the merits, the moving Party may file the document it sought to file under seal on the Court's public docket.

6.5.  Non-Application of Order.  The restrictions regarding Confidential Information shall not apply to documents or information designated Confidential which were, are or become public knowledge, not in violation of this Stipulated Protective Order.

7.  **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Information or Items designated as "CONFIDENTIAL" pursuant to this Order, that Party must:

(a)  promptly notify the Producing Party.

(b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party.  No production or other disclosure of such information pursuant to the subpoena or other process shall occur before the Party served with the subpoena complies with the processes stated in Sections 7(a) and (b), above,

If the Producing Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as Confidential before a determination by the Court from which the subpoena

or order issued, unless the Party has obtained the Producing Party's permission. The Producing Party shall bear the burden and expense of seeking protection in that court of its material, and nothing in these provisions authorizes or encourages a Receiving Party in this action to disobey a lawful directive from another court, or its other legal obligations.

### 8.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately: (a) notify the Producing Party,  of the unauthorized disclosures (b) use its best efforts to retrieve all unauthorized copies of the Protected Material; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (d) request such person or persons to execute the Exhibit A to this Order.

### 9.   INADVERTENT PRODUCTION OF DOCUMENTS

9.1.   ~~9.1~~   Pursuant to the agreement of the Parties under F.R.E. 502e and Order of this Court under F.R.E. 502(d), no disclosure, production, or exchange of documents or information in this case shall constitute a waiver of any applicable work product protection in this or any other federal or state proceeding.  This Order applies to any documents or Electronically Stored Information ("ESI") disclosed, exchanged, produced, or discussed – whether intentionally or inadvertently – among the parties, their counsel, and/or any agents (such as vendors and experts) in the course of this litigation (collectively, "Produced Documents").

~~9.2   This Order regardless of whether the documents or ESI describe or relate to actions taken in this litigation, or in prior or separate litigations.~~

9.2.   ~~9.3~~   Upon learning of an inadvertent production, the Producing Party shall promptly give all counsel of record notice of the inadvertent production.

The notice shall identify the document, the portions of the document that were inadvertently produced, and the first date the document was produced.  If the Producing Party claims that only a portion of the document was inadvertently produced, the Producing Party shall provide a new copy of the document with the allegedly privileged portions redacted. Within seven (7) days, the Producing Party shall produce to all counsel of record a privilege log substantiating the claims

9.3.    ~~9.4~~   Upon receiving ~~notice of an inadvertent production, or upon determining that a document received is known to be privileged~~Notice, the Receiving Party must promptly ~~return,~~ sequester~~, or destroy~~ the specified information and any copies it has, and shall ~~destroy~~sequester any notes that reproduce, copy or otherwise disclose the substance of the privileged information.  ~~The~~After receiving notice, the Receiving Party may not use or disclose the information until the claim is resolved. ~~If the Receiving Party disclosed the information before being notified, it must take reasonable steps to retrieve and prevent further use or distribution of such information until the claim is resolved.~~

~~9.5   A party receiving documents produced by another party is under a good faith obligation to promptly alert the Producing Party if a document appears on its face or in light of facts known to the Receiving Party to be privileged.~~

~~9.6   To the extent that any party obtains any information, documents or communications through inadvertent disclosure, such information, documents and communications shall not be filed or presented for admission into evidence or sought in discovery by that party in any action.~~

9.4.    ~~9.7~~   If the Receiving Party challenges a claim that a Produced Document is properly privileged, the Receiving Party may in connection with a good faith challenge, refer to the contents of the document in any paper submitted to the Court, so long as such filing is made under seal pursuant to Local Rule 79-5~~.~~. The Receiving Party is permitted to consult any sequestered materials to draft his, her, or its submission in support of the good faith challenge. If requested by the

Receiving Party, the Producing Party shall provide such document to the Court for in camera review.

9.5. ~~9.8~~ If the Court sustains the claim that a Produced Document is privileged, the Receiving Party shall, within two (2) business days of the Court's Order, return the privileged Produced Document, as well as any copies thereof and destroy any notes relating to the Produced Document and advise the Producing Party in writing of the destruction.

9.6. ~~9.9~~ Nothing in this Order shall be construe to require the production of any Document or ESI that a party contends is protected from disclosure by the attorney/client privilege and/or work product doctrine.

## 10.   PRESERVATION OF RIGHTS

10.1. ~~9.1~~ Modification. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

10.2. ~~9.2~~ Right to Assert Other Objections. By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any document, Information or Item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

10.3. ~~9.3~~ No Waiver. Entering into, agreeing to, and/or producing or receiving material designated as Confidential or otherwise complying with the terms of this Order shall not:

       (a)   operate as an admission by any Party that any particular material designated as Confidential contains or reflects trade secrets, proprietary or commercially sensitive information, or any other type of Confidential Information;

(b)     operate as an admission by any Party that the restrictions and procedures set forth herein constitute or do not constitute adequate protection for any particular information deemed by any Party to be Confidential;

(c)     prejudice in any way the rights of any Party to seek a determination by the Court whether any information or material should be subject to the terms of this Order;

(d)     prejudice in any way the rights of any Party to petition the Court for a further protective order relating to any purportedly confidential information;

(e)     prevent the Parties from agreeing in writing or on the record during a deposition or hearing in this action to alter or waive the provisions or protections provided for herein with respect to any particular information or material; or

(f)     limit Producing Parties' ability to grant Parties or Non-Parties access to their own documents and/or information.

## 11.   FINAL DISPOSITION

Within sixty (60) days after the final disposition of this action, as defined in Section 4, each Receiving Party must return all Protected Material to the Producing Party or, if the Producing Party's Counsel is so informed, destroy such material, except that Receiving Parties may keep copies of documents to the extent they are required by law or professional ethics to do so.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials

contain Protected Material.  Any such archival copies that contain or constitute

Protected Material remain subject to this Order as set forth in Section 4.

**12.    TIME PERIODS**

All time periods set forth in this Order shall be calculated according to Rule 6 of the Federal Rules of Civil Procedure, as then in effect.

Formatted: Font: Not Bold

Formatted: Font: Not Bold

Dated:        February 13, 2015      Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

By: /s/ Laurence M. Rosen, Esq.
Laurence M. Rosen (SBN # 219683)

Lead Counsel for Plaintiffs and the putative Class

Dated:     __February 13, 2015      HINSHAW & CULBERTSON LLP

By: _____
John W. Sheller
Wendy Wen Yun Chang
Renee C. Ohlendorf

Attorneys for Defendants
GOLDMAN KURLAND MOHIDIN, LLP, and AHMED MOHIDIN

Proposed Protective Order signed by Parties docroposed Protective          18
[Proposed] Protective Order

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025.

On February 13, 2015, I served the within **DECLARATION OF RENEE CHOY OHLENDORF IN RESPONSE TO ORDER TO SHOW CAUSE, AND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL,** on the following attorney(s) of record and/or interested parties in this action, by placing a true and correct copy(ies) thereof enclosed in sealed envelope(S), addressed as follows, by the following means:

| | |
|---|---|
| Laurence M. Rosen, Esq.<br>Jonathan Horne, Esq.<br>THE ROSEN LAW FIRM, P.A.<br>355 South Grand Avenue, Suite 2540<br>Los Angeles, CA 90071<br>213-785-2610 - Telephone<br>213-226-4684 - Facsimile<br>lrosen@rosenlegal.com<br>JHorne@rosenlegal.com | Attorneys for Plaintiff<br>LEAD PLAINTIFFS |

☐ **(BY MAIL)**:   I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid.   I am readily familiar with this firm's practice of collection and processing correspondence for mailing.   Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.   I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**:   Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person[s] at the e-mail address[es] set forth herein.   I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(BY CM/ECF SERVICE)**: I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

Executed on February 13, 2015, at Los Angeles, California.

**(FEDERAL)**: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.   I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct

MELANIE DAVIS

1

31483411v1 0945434